UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,

v.

JOHN BRUENS, et al.

Criminal No. 05-10102-JLT

MEMORANDUM IN SUPPORT OF DEFENDANTS'
JOINT MOTION FOR A BILL OF PARTICULARS

Defendants John Bruens, Mary Stewart, Melissa Vaughn, and Marc Sirockman (collectively "Defendants"), seek a bill of particulars as to Counts 1 through 8 of the Indictment, which allege both a conspiracy in violation of 18 U.S.C. §317 and substantive violations of 42 U.S.C. §1320a-7b(b)(2)(A). In these counts, the government broadly alleges that the Defendants both conspired and "did knowingly and willfully cause to be offered remuneration, directly and indirectly, overtly and covertly, in cash and kind" to various doctors to induce them to "refer individuals to pharmacies for the furnishing of the drug Serostim…." See e.g., Indictment ¶54. Additionally, the government has represented that it intends to "offer evidence that defendants engaged in a scheme to offer or pay kickbacks to physicians *not specifically referred to in the Indictment*" that it does not characterize as Fed. R. Evid. 404(b) material. See AUSA Mary Elizabeth Carmody's May 31, 2005 discovery letter, p. 7.[1]

---

[1] The letter continues on to make the point that the Government does not believe that this evidence is 404(b) evidence, "the government considers this evidence directly relevant to the conspiracy alleged in Count 1 of the Indictment…[however] should the Court disagree with the government, the government may offer this evidence pursuant to Fed. R. Evid. 404(b)…" Id.

Defendants seek by this motion to discover which transactions, out of a universe of literally thousands of facially legitimate transactions, are alleged by the government to constitute evidence that Defendants engaged in an illegal scheme. Because the means by which the conspiracy and the substantive counts were allegedly executed are many of the standard sales and marketing practices used by the Defendants' employer, Serono Laboratories, Inc. ("Serono"), and because the government has produced documents related to seemingly each and every transaction entered into by Serono over five years,[2] Defendants have *no* way of discerning which of Serono's transactions, other than the alleged offers to physicians to attend the Cannes Conference in France, the government alleges were part of the alleged conspiracy, substantive counts, or are otherwise characterized by the government as transactions in furtherance of the allegedly illegal scheme (yet not 404(b) material).[3] The information sought by this motion is essential both to Defendants' ability to prepare their defense to the charged conspiracy and to eliminate the substantial likelihood of prejudicial surprise at trial.

## ARGUMENT

A motion for bill of particulars should be granted "if the accused, in the absence of a more detailed specification, will be disabled from preparing a defense, caught by unfair surprise at trial, or hampered in seeking the shelter of the Double Jeopardy Clause." United States v. Sepulveda, 15 F. 3d 1161, 1192-93 (1st Cir. 1993). While

---

[2] The government has produced over *four million* documents thus far and production is still ongoing. In a call with the government on February 6, 2006, to narrow the discovery issues, Defendants confirmed that the government is just now producing an additional 300 boxes that need to be reviewed and scanned. As such, Defendants reserve the right to file additional discovery motions until after such time that they have received, and had an opportunity to review, the additional discovery.

[3] It bears emphasis that Defendants are not seeking evidentiary detail about a known set of transactions. Rather, Defendants ask that the government identify particular transactions for which it will attempt to hold Defendants responsible for at trial.

courts cannot know in advance whether actual prejudice or unfair surprise will result from a denial of a motion for a bill of particulars, "[t]here is no good reason to require the defendant to engage in guesswork" when granting a bill of particulars will "prevent the likelihood of such surprise and…permit the defendant to prepare for trial." United States v. Vasquez-Ruiz, 136 F.Supp.2d 941, 944 (N.D. Ill. 2001) (citing United States v. Bortnovsky, 820 F.2d 572 (2d Cir. 1987)). "While a bill of particulars is not intended, as such, as a means of learning the government's evidence and theories, if necessary to give the defendant enough information about the charge to prepare his defense, it will be required even if the effect is disclosure of evidence or theories." United States v. Avellino, 129 F.Supp.2d 214 (E.D.N.Y. 2001) (quoting United States v. Barnes, 158 F.3d 662, 665 (2d Cir. 1998)).

This Court enjoys broad discretion in ruling upon a request for a bill of particulars, Will v. United States, 389 U.S. 90, 98-99 (1967), and such discretion is especially appropriate here where a bill of particulars will prevent Defendants from significant undue labor in preparing a defense. See United States v. Trie, 21 F.Supp.2d 7, 21-22 (D.D.C. 1998) ("a defendant…should not have to waste precious pre-trial preparation guessing which statements he has to defend against….when the government knows precisely the statement on which it intends to really and can easily provide the information"); and United States v. Pack, 20 F.R.D. 209, 212 (D.Del. 1957) ("The purpose of a bill of particulars is to prevent surprise and to save the defendant from undue labor in the preparation of his case.") On the facts of this case, a bill of particulars is the appropriate protection against actual prejudice and is absolutely necessary to allow Defendants to prepare their defense and avoid surprise at trial.

I.  **DEFENDANTS NEED A BILL OF PARTICULARS AS TO COUNTS 1-8 OF THE INDICTMENT TO PREPARE THEIR DEFENSE.**

Count 1 of the Indictment alleges a conspiracy, the purpose of which was:

> to offer certain ... physicians financial incentives in order to obtain the number of prescriptions that would advance a sales goal of increasing sales by $6,000,000, which was to be accomplished by offering an all-expenses paid trip for each physician and a guest to the Cannes [AIDS] Conference in return for physicians writing additional prescriptions for Serostim.

Indictment ¶23.  Notably, while the Indictment alleges that the conspiracy spanned from March 1999 to December 1999, it does not specify any other "financial incentives" offered to physicians and, in fact, does not allege any other unlawful act -- overt or otherwise -- that occurred before or after March-April 1999.  Thus, if the government intends to introduce evidence of other allegedly unlawful acts in furtherance of the conspiracy, it is only logical that the government be ordered to provide Defendants with the particulars of what those acts are.  Without such specificity, the Defendants will be forced to review all four million documents in an attempt to discern which of the thousands of transactions between March and December 1999, the government views as illegal.

Similarly, in Counts 2-8, various Defendants are charged with knowingly offering financial incentives to certain doctors during different time periods of 1998.  Significantly, the charging language in every count is incredibly broad and only states that the applicable Defendants are alleged to have "knowingly and willfully offered and pay, and cause to be offered and paid, remuneration, directly and indirectly, overtly and covertly, in cash and in kind, to [a specific doctor] to induce [the doctor] to refer individuals….to pharmacies for the furnishing of the drug Serostim," without specifying

which of the many facially legal transactions the government considers illegal offers of remuneration. [4] See e.g., Indictment ¶54.  While some of the counts contain time periods that are more discrete than others (e.g. Count 2 appears to be limited to a couple of days), several of the Counts only specify a month or several months.  See e.g., Counts 3, 4, and 5.  In the business of even a moderately successful pharmaceuticals company, a period of months can easily include thousands of transactions.  The Defendants are only left to guess as to which of the transactions during the broad time specified in each substantive count the government considers illegal inducements.  Trie, 21 F.Supp.2d at 21-22 ("a defendant…should not have to waste precious pre-trial preparation guessing…").

In a factually similar case, United States v. Bortnovsky, the court of appeals reversed defendants' convictions on the ground that the district court had abused it discretion in denying defendants' motion for a bill of particulars.  820 F.2d at 573-74.  In Bortnovsky, the defendants were charged with submitting false insurance claims.  Although the indictment "sets forth essential elements of the mail fraud charges,"  it did not notify defendants which of the eight burglaries were allegedly staged or which of 4000 documents produced by the government were allegedly falsified.  Id.  The Second Circuit concluded that the defendants "were hindered in preparing their defense" and prejudiced at trial by being "forced to explain the events surrounding eight actual burglaries and to confront numerous documents unrelated to the charges pending."  Id. at 574-75.  Such a burden shift would be far more prejudicial in this case, as Defendants do

---

[4] The allegations incorporated by reference in each of the substantive counts (2-8) may imply that the government intends to limit its proof of the counts to only those transactions that are incorporated by reference.  For example, Count 2 specifically incorporates the offer of the Cannes Conference as described in paragraphs 33-36, & 37 of the Indictment.  If the government confirms that they will not seek to introduce other allegations of remuneration or inducements other than those specifically incorporated by reference in each count, Defendants will withdraw their request for a bill of particulars with respect to those substantive counts.

5

now know which of thousands of transaction allegedly involved illegal inducements or which of millions of documents relate to the transaction which will be cited to prove the conspiracy or substantive charges.

Similarly, in United States v. Nachamie, 91 F.Supp.2d 565, 574, 576 (S.D.N.Y. 2000), a case that involved a similar conspiracy to commit Medicare fraud, the court ordered the government to provide particulars with respect to "each and every one of the false and misleading claims" which the government intended to prove at trial was filed as part of the alleged conspiracy.[5] The government in Nachamie complied with its discovery obligations by producing "over 2,000,000 pieces of paper in hundreds of boxes and files relating to 2,000 Medicare claims," but it never "informed the defendants which of these claims were false and in what way they were false." Id. At 571. Thus, the court ordered the government to file a bill of particulars with the relevant information. See also, United States v. Savin, 2001 WL 243533 at *# (S.D.N.Y. 2001) (court granted defendant's motion for bill of particulars because "absent further information [the defendant] will be forced to comb through this veritable mountain of [100,000] documents to attempt to guess which of the numerous transactions documented therein…are alleged by the government to have been improper").

Here, Defendants are charged with defrauding Medicaid, not by the submission of false claims, but by the provision of illegal inducements. Just as the defendants in Nachamie were entitled to know which of 2000 claims the government would at trial cite as evidence of the alleged conspiracy, Defendants here are entitled to know which of

---

[5] The particulars required by the Nachamie court included: (i) the identity of the person who prepared and submitted each allegedly false claim form, (ii) the time and place each form was prepared and submitted, (iii) each entry on each form alleged to be false, (iv) the manner in which each such entry was allegedly false, (v) the entry which would have been accurate, and (vi) the manner in which the allegedly accurate amount of each allegedly false claim was calculated. Id. at 574.

6

thousands of transactions entered into by Serono during 1999 will be introduced by the government at trial to prove the conspiracy and the substantive counts. Without such specificity, the Defendants will have to guess which transactions the government views as legal or illegal.

II. **DEFENDANTS NEED A BILL OF PARTICULARS AS TO WHAT OTHER "EVIDENCE THAT DEFENDANTS ENGAGED IN A SCHEME TO OFFER OR PAY KICKBACKS TO PHYSICIANS NOT SPECIFICALLY REFERRED TO IN THE INDICMENT" THE GOVERNMENT INTENDS TO USE AT TRIAL.**

In an apparent attempt to circumvent the established method of charging defendants in a specific indictment, the government offhandedly mentions in its initial discovery disclosures that it "may offer evidence that defendants engaged in a scheme to offer or pay kickbacks to physicians *not specifically referred to in the Indictment,*" that it does not consider 404(b) evidence. M. Carmody 1/30/05 letter, p. 7. The government further states that it "considers this evidence directly relevant to the conspiracy charged in Count 1 of the Indictment," and therefore is not offering it pursuant to Fed. R. Evid. 404(b), at least initially.[6] Id.

First, if this "other" evidence is directly relevant to Count 1 conspiracy as the government claims, then a bill of particulars is needed for all of the reasons examined herein. See e.g., Nachamie, 91 F.Supp.2d at 576 (government must provide particulars of each and every claim it intends to use at trial). As described, this is not the typical criminal case, such as a bank robbery, where a defendant can easily identify what evidence of overt acts (even if not specified in the indictment) the government may

---

[6] To the extent that the government changes its position and claims that it is offering such evidence only pursuant to Fed. R. Evid. 404(b), please see the Defendants' accompanying Motion For Immediate Disclosure of Fed. R. Crim. P. 404(b) Evidence.

7

introduce at trial to support the conspiracy. If it were, for example, a defendant would capably be able to predict and prepare for the government's admission of any evidence relating to the planning of the robbery or the robbery itself. Here, however, the government may seek to introduce any *one* of thousands of facially innocuous transactions if it at some point it decides to characterize one as an inducement. Without a bill of particulars, Defendants have no way of predicting which of these transactions the government may use to support its alleged conspiracy. Without these particulars the Defendants will be prejudiced in their ability to obtain a fair trial. Sepulveda, 15 F.3d at 1192-93.

Second, if the "other" evidence alluded to in the government's discovery letter is not direct evidence of the allegations actually contained in the Indictment, then it would not be admissible at trial unless it is offered pursuant to Fed. R. Evid. 404(b). If the government is instead going to characterize this "other" evidence as 404(b) evidence, the Defendants withdraw their request for a bill of particulars with respect to it, and instead request early disclosure of it as set forth in Defendants Joint Motion for Immediate Disclosure of Fed. R. Crim. P. 404(b) Evidence.

### III. DEFENDANTS NEED A BILL OF PARTICULARS DESCRIBING WHICH DOCTORS WHO ATTENDED THE CANNES CONFERENCE AT SERONO'S EXPENSE, THAT THE GOVERNMENT VIEWS AS HAVING "DISTINCT" CIRCUMSTANCES.

Finally, in the same discovery letter that the government generally disclosed its "other direct evidence of the conspiracy," the government revealed that it also possesses "evidence that certain physicians not named in the Indictment attended the Cannes Conference at Serono's expense…[but] the evidence indicates that the circumstances of these doctors are distinct from those doctors charged in the Indictment and [it] does not

8

view this evidence as exculpatory." M. Carmody 1/30/05 letter, p. 6. In order to prepare their defense and not be prejudiced at trial, Defendants are entitled to know which doctors, and under what circumstances, the government believes that Serono legally paid for the expenses of Serostim prescribing doctors to attend the Cannes conference. Avellino, 129 F.Supp.2d at 214 ("a bill of particulars is…necessary to give the defendant enough information about the charge to prepare his defense, it will be required even if the effect is disclosure of evidence or theories"). It bears repeating that this is not a typical criminal case where such distinctions are obvious. Defendants, left to their own devices, cannot possibly guess or discern what distinctions the government is making between legal or illegal attendance at the conference, and such information is critical to Defendants' understanding of the charges against them. As such, Defendants are entitled to both a bill of particulars indicating which doctors the government views as "distinct" and the production of any documentary evidence in support thereof.

## CONCLUSION

WHEREFORE, for the reasons stated herein, Defendants respectfully move this Court to order the Government to provide Defendants with a bill of particulars as set forth in Defendants Joint Motion for Bill of Particulars.

Respectfully submitted,

JOHN BRUENS, MARY STEWART,
MELISSA VAUGH, and MARC SIROCKMAN,
by their undersigned attorneys:


| | |
|---|---|
| __/s/ Tracy A. Miner_____ | __/s/ Thomas McC. Souther_____ |
| Tracy A. Miner | Thomas McC. Souther |
| Counsel for Mark Sirockman | Counsel for John Bruens |
| | |
| _/s/_Mark A. Berman_____ | __/s/ Adam. S. Hoffinger_____ |
| Mark A. Berman | Adam S. Hoffinger |
| Counsel for Mary Stewart | Counsel for Melissa Vaughn |

Date:   February 10, 2006