# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

---

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | NO. 05-CR-10102 JLT |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| JOHN BRUENS, MARY STEWART, | ) |  |
| MELISSA VAUGHN, and | ) |  |
| MARC SIROCKMAN, | ) |  |
|  | ) |  |
| Defendants. | ) |  |

---

## MEMORANDUM IN SUPPORT OF DEFENDANTS' JOINT MOTION
## TO PRECLUDE TESTIMONY BY ADAM WHITEHURST

SIDLEY AUSTIN LLP
Thomas McC. Souther, Esq.
    (admitted *pro hac vice*)
Roger J. Hawke, Esq.
    (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
(212) 839-5300

*Counsel for John Bruens*

MORRISON & FOERSTER LLP
Adam Hoffinger, Esq.
    (admitted *pro hac vice*)
James M. Sullivan, Esq.
    (admitted *pro hac vice*)
2000 Pennsylvania Avenue, N.W.
Washington, D.C. 20008-1888
(202) 887-1500

*Counsel for Melissa Vaughn*

GIBBONS, DEL DEO, DOLAN,
GRIFFINGER & VECCHIONE, P.C.
Mark A. Berman, Esq.
    (admitted *pro hac vice*)
Robert G. Marasco, Esq.
One Riverfront Plaza
Newark, New Jersey 07102
(973) 596-4500

*Counsel for Mary Stewart*

MINTZ, LEVIN, COHN, FERRIS,
 GLOVSKY & POPEO, P.C.
Tracy A. Miner, Esq.  BBO # 547137
McKenzie E. Webster, Esq.  BBO #651204
One Financial Center
Boston, Massachusetts 02110
(617) 542-6000

*Counsel for Marc Sirockman*

## PRELIMINARY STATEMENT

The Indictment in this case was filed on April 15, 2005 (the "Indictment"). It charges that, in the period March 1999 through December 1999, defendants, former employees of Serono, Inc., a pharmaceutical company, conspired with others to offer physicians a free trip to a medical conference on nutrition and HIV infection to be held in Cannes, France, in April 1999 (the "Cannes Conference"), on the condition that the doctors prescribe Serostim to their AIDS patients. Count Three of the Indictment charges that in March 1999 such an offer was made to Dr. Joseph Piperato in Florida in violation of 42 U.S.C. § 1320a-7b(b)(2)(A). Adam Whitehurst, the salesman for Serono who allegedly approached Dr. Piperato, was questioned by the Grand Jury on January 6, 2004. (The transcript from Mr. Whitehurst's January 6, 2004 testimony is attached hereto as Exhibit A.) Whitehurst testified repeatedly that he had made no such *quid pro quo* offer to Dr. Piperato. Dr. Piperato did not testify in the Grand Jury. However, he was interviewed by the FBI in March, 2005, at which time he firmly denied that he had ever been offered a free trip to Cannes in exchange for writing prescriptions for Serostim.

On June 28, 2005, Whitehurst was summoned back to the Grand Jury, given immunity, and questioned extensively about the identical matters about which he had been questioned in his January 2004 appearance. (The transcript from Mr. Whitehurst's June 28, 2005 testimony is attached hereto as Exhibit B.)

The Government abused the Grand Jury process by recalling Whitehurst to the Grand Jury two months after the Indictment had been issued and cross-examining him on the subjects covered in his pre-Indictment appearance. Defendants seek an order excluding the testimony of Adam Whitehurst at trial.

**THE GOVERNMENT IMPROPERLY USED THE
GRAND JURY TO CROSS-EXAMINE WHITEHURST
IN PREPARATION FOR THE TRIAL OF THE INDICTMENT**

Count Three of the Indictment charges that between March 1, 1999 and December 1999 the defendants offered "Dr. P" a free trip to a medical conference at Cannes, France, to induce him to prescribe Serostim for patients. The Government has identified "Dr. P" as Dr. Joseph Piperato and it has identified Adam Whitehurst, a former employee of Serono, as the salesperson who allegedly made this offer. Dr. Piperato was questioned by the FBI on March 16, 2005. He stated in that interview that although Whitehurst had offered him a trip to Cannes, Whitehurst never asked him to write prescriptions for Serostim in return. The FBI's interview memo states:

> PIPERATO stated that WHITEHURST did not say that PIPERATO had to do anything in particular for the trip. He stated that WHITEHURST would never have asked him to write prescriptions in exchange for the trip to Cannes, because the nature of their relationship would not have allowed it. PIPERATO stated that if WHITEHURST reported that he talked to PIPERATO about prescriptions in that context, "that's a lie."
>
> . . .
>
> PIPERATO stated that he never discussed writing prescriptions in exchange for this trip. He never spoke with WHITEHURST about the issue, and never was offended by any such discussion. WHITEHURST did not ask him what he thought of any such offer. (JB 00055-00056) (Emphasis added.)

This interview memo was turned over to the defendants by the Government on May 31, 2005 as Brady material pursuant to Local Rule 116.2. (A copy of this memo is attached hereto as Exhibit C.)

Adam Whitehurst was questioned by the Grand Jury on January 6, 2004.  He repeatedly swore that he had never offered a trip to Dr. Piperato to induce him to write prescriptions for Serostim.  He testified as follows:

1.  Q  Did you make this offer to Dr. Piperato?

    A  No.  (Ex. A at 43.)

2.  Q  You never said to Dr. Piperato, if you do write
       a certain number of scripts, then Serono will pay
       your expenses to go to Cannes, France?

    A  I never offered the trip to Dr. Piperato.  (Id. at 44.)

3.  Q  You didn't ask Dr. Piperato if he wanted to go to
       Cannes, France, your personal friend and
       professional acquaintance.  You discussed with him
       the program without making the offer.  Is that your
       testimony to this Grand Jury?

    A  Yes, it is.  (Id.)
                    . . .

4.  Q  With respect to Dr. Piperato, it's your testimony to
       this Grand Jury under oath that Dr. Piperato
       received an unrestricted educational grant to go to
       Cannes?

    A  Yes.  (Id. at  47.)
                    . . .

5.  Q  I'm going to ask you again, Mr. Whitehurst, under
       oath, when you talked to Dr. Piperato, did you offer
       him the trip to Cannes, France, on Serono's expense
       in exchange for a certain number of scripts of
       Serostim to be written?

    A  No.

    Q  You never did that?

    A  I never did that.  (Id. at  61-62.)

                    . . .

6.    Q    So when you discussed the trip with Dr. Piperato, did he agree to go?

      A    No.  Because I didn't -- I didn't ask him.  We just discussed it.  (Id. at 63.)

7.    Q    Okay.  So your testimony before this Grand Jury is that later he did go and he received an unrestricted educational grant?

      A    Yes.  (Id.)

8.    Q    In exchange for that unrestricted educational grant, did Dr. Piperato agree to write additional scripts for Serostim?

      A    No, not that I'm aware of.  (Id. at  64.)

9.    Q    So it's your testimony that there was no quid pro quo with respect to writing scripts and getting the trip for Cannes, France; is that correct?

      A    With me, correct.  (Id.)
                                . . .

10.   Q    Did you present the Cannes program to Dr. Piperato?

      A    I did not present the program to Dr. Piperato.  I discussed it with him.  (Id. at 74.)
                                . . .

11.   Q    Okay.  So I'm going to ask you one more time, Mr. Whitehurst, when you discussed the Cannes program with Dr. Piperato, did you in fact offer him the proposition of going to Cannes in return for increasing the number of scripts he wrote for Serostim?

      A    No.  (Id. at 87.)
                                . . .

12.   Q    Now with respect to Dr. Piperato, what was it that made you reluctant to make the offer to him with respect to Cannes?

A      Like I said before, when it had been brought up to our group, people had brought up some resistance to it.

. . .

A      And that's why I didn't make the offer to him. That's why I discussed it with him, because I was concerned about it.  (Id. at 118.)

Thus, both the alleged offeror, Whitehurst, and the alleged offeree, Dr. Piperato – the only persons present at the meeting alleged in Count Three – gave exculpatory statements or testimony with respect to the charge made in that Count.

A Grand Jury may not "conduct an investigation for the primary purpose of helping the prosecution prepare indictments for trial."  In re Grand Jury Proceedings (Diamante), 814 F.2d 61, 70 (1st Cir. 1987); see also U.S. v. Doe, 455 F.2d 1270, 1273 (1st Cir. 1972) ("It is improper to utilize a Grand Jury for the sole or dominating purpose of preparing an already pending indictment for trial" (citation omitted).).  On June 28, 2005, however, Whitehurst was summoned back to the Grand Jury and reexamined about his meeting with Dr. Piperato – the subject of Count Three of the pending Indictment.  This was not part of any "continuing investigation."  There was no inquiry about other events or individuals that were not already the subject of the pending Indictment.  Instead, the examination of Whitehurst on June 28, 2005 dealt entirely with his meeting with Dr. Piperato, the circumstances under which a trip to Cannes was offered, and whether or not that offer was intended to induce the doctor to write additional prescriptions for Serostim – all subjects covered at length on January 6, 2004.  Attached hereto as Exhibit D is a chart that demonstrates that the subjects covered in these two Grand Jury appearances were identical.

The undisguised purpose of the June 28, 2005 Grand Jury appearance was to cross-examine Whitehurst who, along with Dr. Piperato, are labeled by the Government as "co-

conspirators." This was done in preparation for the trial of the pending Indictment. The Government was evidently unhappy with Whitehurst's testimony on January 6, 2004 that he had offered <u>no</u> inducements to Dr. Piperato to prescribe Serostim. The Assistant U.S. Attorney made her disbelief of that testimony abundantly clear. <u>See, e.g.</u>:

> Q     I'm going to ask you again, Mr. Whitehurst, under oath, when you talked to Dr. Piperato, did you offer him the trip to Cannes, France, on Serono's expense in exchange for a certain number of scripts of Serostim to be written? (Ex. A at 61-62.)
>
> . . .
>
> Q     Okay. So I'm going to ask you one more time, Mr. Whitehurst, when you discussed the Cannes program with Dr. Piperato, did you in fact offer him the proposition of going to Cannes in return for increasing the number of scripts he wrote for Serostim? (<u>Id.</u> at 87.)

The recall of Whitehurst to the Grand Jury on June 28, 2005 was plainly an attempt to elicit more inculpatory testimony. On this second occasion Whitehurst testified that his boss, a co-defendant in the pending Indictment, had told him about a "program by which physicians were being offered a trip to Cannes in connection with a certain number of prescriptions." (Ex. B at 9.) His boss allegedly further told him that such an offer should be made to Dr. Piperato. (<u>Id.</u> at 12.) Whitehurst nevertheless continued to deny he had offered an inducement to Piperato. He testified he made no "offer." "I discussed it with him," he said. "Does that mean I offered it to him?" (<u>Id.</u> at 21.)

There is no presumption of regularity in the Grand Jury process in the circumstances described above. <u>See</u> <u>U.S. v. Flemmi</u>, 245 F.3d 24, 28 (1st Cir. 2001) (presumption of grand jury process regularity persists if a continuing investigation "results in the indictment of parties not previously charged" or when it "leads to the filing of additional charges against previously indicted defendants."); <u>U.S. v. Badger</u>, 983 F.2d 1443, 1458 (7th Cir. 1993)

(existence of superseding indictment central to court's rejection of defendant's allegation of use of grand jury process for post-indictment discovery).  Here, no superseding indictment has been filed.  Indeed, inasmuch as the Cannes Conference occurred in April 1999, the five-year statute of limitations regarding prior offers to attend that conference certainly would have expired before June 2005, when Whitehurst was recalled to the Grand Jury and reexamined about that conference.  The "sole or dominating purpose" of the reexamination of Whitehurst in June 2005 with respect to Dr. Piperato and the Cannes Conference, therefore, could not have been to file new charges.  See Doe, 455 F.2d at 1273.  Even in cases where the Government has filed a superseding indictment, moreover, the Court "has every right to be skeptical" if it "merely corrects peripheral details or adds something trivial to the pending charges."  Flemmi, 245 F.3d at 30.  Here, nothing was added – not even "trivial" or "peripheral" details – to the pending charges.

In short, the Government blatantly disregarded the rule that the Grand Jury process may not be used for the purpose of getting a pending indictment ready for trial.  In cases such as this, where a "grand jury might . . . have been used dominantly to prepare for . . . trial," the First Circuit has held that it is appropriate for a court to "proscribe the calling of a witness whose testimony . . . appeared to have been elicited chiefly for its contribution to the trial."  Doe, 455 F.2d at 1276.  In light of the improper use of the grand jury in this case, we submit that the Court should enter an order precluding the testimony of Adam Whitehurst at the trial of this Indictment.

## CONCLUSION

In light of the foregoing, Defendants' motion to preclude the testimony of Adam

Whitehurst should be granted.


Respectfully submitted,

JOHN BRUENS, MARY STEWART,
MELISSA VAUGHN, and MARC SIROCKMAN
by their undersigned attorneys:


  /s/ Thomas McC. Souther
Thomas McC. Souther, Esq.
    (admitted *pro hac vice*)
Roger J. Hawke, Esq.
    (admitted *pro hac vice*)
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
(212) 839-5300

*Counsel for John Bruens*


  /s/ Mark Berman
Mark A. Berman, Esq.
      (admitted *pro hac vice*)
Robert G. Marasco, Esq.
GIBBONS, DEL DEO, DOLAN,
GRIFFINGER & VECCHIONE, P.C.
One Riverfront Plaza
Newark, New Jersey 07102
(973) 596-4500

*Counsel for Mary Stewart*


  /s/ Adam Hoffinger
Adam Hoffinger, Esq.
    (admitted *pro hac vice*)
James M. Sullivan, Esq.
    (admitted *pro hac vice*)
MORRISON & FOERSTER LLP
2000 Pennsylvania Avenue, N.W.
Washington, D.C.  20008-1888
(202) 887-1500

*Counsel for Melissa Vaughn*


  /s/ Tracy A. Miner
Tracy A. Miner, Esq.  BBO # 547137
McKenzie E. Webster, Esq.  BBO #651204
MINTZ, LEVIN, COHN, FERRIS,
  GLOVSKY & POPEO, P.C.
One Financial Center
Boston, Massachusetts 02110
(617) 542-6000

*Counsel for Marc Sirockman*


Dated:  September 19, 2006

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing Memorandum of Law in Support of the Joint Motion to Preclude Testimony by Adam Whitehurst ("Memorandum"), filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on September 19, 2006.  In addition, pursuant to Section M of the Electronic Case Filing Administrative Procedures for the District of Massachusetts, a hard copy of Exhibits A, B, C, and D have been filed with the Court and served by Federal Express on counsel for the United States, Mary Elizabeth Carmody, United States Attorney's Office, District of Massachusetts, John Joseph Moakley Courthouse, 1 Courthouse Way, Suite 9200, Boston, MA 02210.


   /s/ Catherine B. Winter

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | NO. 05-CR-10102 JLT |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN BRUENS, MARY STEWART, | ) | |
| MELISSA VAUGHN, and | ) | |
| MARC SIROCKMAN, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## NOTICE OF FILING WITH CLERK'S OFFICE

Notice is hereby given that the documents, exhibits or attachments listed below have been

manually filed with the Court and are available in paper form only:

> Exhibits A, B, C and D to the Memorandum in Support of
> Defendants' Joint Motion to Preclude Testimony by Adam
> Whitehurst

The original documents are maintained in the case file in the Clerk's Office.

Dated: September 19, 2006

SIDLEY AUSTIN LLP

By: _____
      Thomas McC. Souther
      787 Seventh Avenue
      New York, New York 10019
      (212) 839-5300

Attorneys for Defendant John Bruens