UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                        )
                                        )
UNITED STATES OF AMERICA                )
                                        )
                                        )
v.                                      )    Criminal No. 05-10102-JLT
                                        )
                                        )
JOHN BRUENS, MARY STEWART, MARC         )
SIROCKMAN, and MELISSA VAUGHN,          )
                                        )
              Defendants.               )
_____)

**UNITED STATES' CONSOLIDATED OPPOSITION TO THE DEFENDANTS
STEWART AND SIROCKMAN'S MOTIONS FOR SEPARATE TRIALS; AND
DEFENDANTS BRUENS AND VAUGHN'S MOTION TO PRECLUDE
ADMISSION OF MARY STEWART'S STATEMENTS**

Now comes the United States of America, by its attorney,

Michael J. Sullivan, United States Attorney for the District of

Massachusetts, and files this Consolidated Opposition to the

Motions of Defendants Stewart and Sirockman for Separate Trials,

and, the Motions of Defendants Bruens and Vaughn's to Preclude

Admission of Statement Made By Co-defendant Mary Stewart.  The

United States files this Consolidated Opposition because each of

these motions are interrelated and the resolution of one may

dictate the result on each of the remainder of the motions.  The

grounds for its opposition are set forth below.

**STATEMENT OF THE CASE**

1.    **Introduction**

On April 14, 2005, an eight-count indictment was returned

against the defendants, John Bruens ("Bruens"), Mary Stewart

("Stewart"), Melissa Vaughn ("Vaughn"), and Marc Sirockman (Sirockman), (collectively "the defendants").  Count One of the Indictment charged the defendants with conspiracy to offer and pay illegal remunerations to physicians, in violation of 18 U.S.C. § 371 and Counts Two through Eight charged the respective defendants with substantive counts of illegally making offers and payments of remuneration to physicians, in violation of 42 U.S.C. § 1320a-7b(b)(2)(A).  Stewart and Bruens are charged in all 8 counts of the indictment.  Vaughn is charged in Counts 1, 2 and 3; Sirockman is charged in Counts 1, 4 and 5.

2.    **Statement of Facts**

The indictment in this case alleges the following facts:

In March, 1999, each of the defendants was a high-level employee of Serono Laboratories, Inc. ("Serono"), a biotechnology and pharmaceutical company based in Norwell, Massachusetts. Bruens was the Vice-President of Marketing and Stewart was the Vice-President of Sales in a business unit known as Metabolic and Immune Therapy ("M&IT").  Vaughn and Sirockman were Regional Directors - Vaughn was in charge of the Southeast Region and Sirockman was in charge of the Northeast Region.

M&IT was responsible for marketing and selling the drug Serostim, a drug that in August of 1996 received accelerated approval from the U.S. Food and Drug Administration ("FDA") only to treat a condition known as AIDS wasting.  By February, 1999,

2

Bruens, Stewart and other executives were aware that sales of Serostim were falling significantly short of their sales goals. In order to rectify the situation, Bruens, Stewart and others called an emergency meeting at the Boston Harbor Hotel for March 1, 1999, and summoned Defendants Sirockman, Vaughn and other Regional Directors to attend.  During the meeting, Bruens and Stewart informed the Regional Directors that they needed to "dig their way out" of the fiscal crisis, and proposed a program by which Serostim would reach a sales goal of "$6 million in 6 days."

As part of the plan to achieve this sales goal, the defendants, and others, implemented a plan in which they asked certain doctors to write up to 30 prescriptions of Serostim in exchange for an all-expense paid trip to Cannes, France (paid for by Serono) to attend the 3rd Annual Conference on Nutrition and HIV Infection ("the Cannes Conference").  Defendants Vaughn and Sirockman, as Regional Directors, made the offer to individual doctors in their region to write the prescriptions in return for the trip to Cannes, or caused their sales representatives to extend the offer.  Bruens and Stewart required the Regional Directors to report back to them on a daily basis as to the number of prescriptions obtained from the targeted doctors, among others.  As part of the conspiracy, the Defendants caused Serono to pay for the travel expenses of the physicians and their

3

guest(s) who actually attended the Cannes Conference.

3.   **Statements and Admissions of Defendants:**

Each of these motions are based upon a variety of statements and admissions made by the defendants in this case either during or after the conspiracy alleged in the indictment.  This opposition recommends how the Court should characterize and treat each of these statements based upon common theories of law.

A.  **Post-Conspiracy Interviews of Stewart and Sirockman:**

After the conspiracy had ended, both Mary Stewart and Marc Sirockman made statements to law enforcement officers.  Mary Stewart was interviewed by agents of the Federal Bureau of Investigation ("FBI") on March 6, 2002.  Marc Sirockman was interviewed by investigators for the state of New Jersey on December 13, 2001.

The government acknowledges that these structured interrogations by law enforcement officers fall within the definition of "testimonial" hearsay as set forth by the U.S. Supreme Court in <u>Crawford v. Washington</u>, 541 U.S. 36, 53 (2004), the Government, therefore, will not attempt to offer these statements against any non-declarant. In addition the statements implicate the cautions and limited use of statements of non-testifying co-defendants under the confrontation clause as set forth in <u>Bruton v. United States</u>, 391 U.S. 123 (1968).  The United States asserts with regard to these statements, however,

4

that with proper redaction and limiting instructions from the Court, these statements can properly be introduced at a joint trial in a manner that prevents any prejudicial impact to the defendants and to prevent any confrontation clause violation that comes within the prohibition of <u>Bruton</u>.[1]

### 1. Mary Stewart's Admissions to the FBI:

The central issue in each of these defense motions are the statements and admissions made by defendant Mary Stewart to agents of the FBI on March 6, 2002. (*See* Exhibits A and B to Bruens and Vaughn's Motion to Preclude Admission of Statements Made by Co-defendant Mary Stewart). The Government does not intend to introduce each of the statements made by Stewart. However, during that interview, among other things, Stewart acknowledges the Cannes kickback scheme and admits her participation in it. She also stated that the scheme was "a momentary lapse of judgment by John Bruens" and that Melissa Vaughn was upset about it. The Government believes that proper

---

[1] Should the Court determine that these statements cannot be safely redacted to prevent any prejudicial impact under the Sixth Amendment, the Government argues alternatively that the Court should grant co-defendant Mary Stewart's request for separate trial. Thereafter, a joint trial of the defendants Bruens, Vaughn and Sirockman would be proper because the only post-conspiracy statements to which Bruens, Vaughn and Sirockman object are Stewart's. These statements might be introduced in that trial under certain circumstances. In an abundance of caution, a plan to try Stewart first would certainly alleviate any Sixth Amendment concerns raised by the defendants and will result in the most time-saving and efficient judicial economy to resolve the charges against each of these four co-defendants.

redaction of these statements will eliminate any potential prejudice under Bruton.

The statements of Mary Stewart are contained in a typed FBI Report of Interview, as well as the Special Agent Kimberly Vagos's rough notes. The Government intends to introduce the following statements made by Mary Stewart with the following proposed redactions:

| **ORIGINAL** STATEMENT | **PROPOSED/REDACTED** STATEMENT |
|---|---|
| Stewart's background information, including her experience in the pharmaceutical industry and with Serono. | Not Redacted |
| –PAGE 5: "According to STEWART, the MEDICAID population was "targeted" by SERONO, because largely, the majority of HIV patients are on MEDICAID." | Not Redacted |

| ORIGINAL STATEMENT | PROPOSED/REDACTED STATEMENT |
|---|---|
| **PAGES 6-7: STEWART was requested to review and explain the following portion of an E-mail[2] message:**<br><br>"Voicemail sent by MELISSA VAUGHN Wednesday, March 3, 1999 regarding JOHN BRUENS offer to pay for certain high writing MDs flight and hotel in Cannes, France in April to attend an HIV Nutrition/ Wasting program in exchange for 30 patient Rxs during our 6 day sales blitz."<br><br>--"STEWART remembers this incident and called it a 'momentary lapse of judgement by JOHN BRUENS. STEWART stated, the real intention was not to trade business for a trip to France.  According to STEWART, VAUGHN got upset over this whole idea.  Even though STEWART did not travel on this trip, she was aware that ALEXIS CORAZON, M.D., had traveled to France.  STEWART added, that ALEXIS CORAZON, M.D. was the only physician to accept this offer from SERONO. | **The statements on pages 6-7 of the Memorandum of Interview, as follows:**<br><br>STEWART remembers this incident **[*i.e.*, the offer to pay for high prescribing physicians' flight and hotel in Cannes, France in April in exchange for 30 patient RXs during the 6 day sales blitz]** and called it **[someone's]** 'momentary lapse of judgement. STEWART stated, the real intention was not to trade business for a trip to France. According to STEWART, MELISSA VAUGHN got upset over this whole idea.  Even though STEWART did not travel on this trip, she was aware that ALEXIS CORAZON, M.D., had traveled to France.  STEWART added, that ALEXIS CORAZON, M.D. was the only physician to accept this offer from SERONO. |

---

[2] Stewart was actually shown Kim Jackson's transcription of Melissa Vaughn's voice mail message.

7

| **ORIGINAL** STATEMENT | **PROPOSED/REDACTED** STATEMENT |
|---|---|
| **– STEWART was then requested to review a memorandum from Sue Womble, Metabolic & Immune therapy to HOWARD GROSSMAN, M.D., dated March 31, 199(9) – which was the invitation letter to the Cannes conference, and in particular the following phrase:**<br><br>"Included with this invitation is an offer of $4,000 grant for the purchase of airline tickets to Cannes.  If you decide you would like us to make your flight arrangements for you, in lieu of the grant, we will purchase on your behalf one business class round trip ticket."<br><br>– STEWART stated, obviously she was wrong and other physicians had traveled to France. | Not Redacted |
| According to STEWART, SERONO gave physicians "more attention" if they wrote numerous prescriptions for Serostim. STEWART described "attention" as buying physicians dinners, or "attention from senior management," but not a monetary compensation. | Not Redacted. |

| **ORIGINAL** STATEMENT | **PROPOSED/REDACTED** STATEMENT |
|---|---|
| STEWART stated, that SERONO received "hundreds" of requests from physicians for money, and it was not from the "high writing" physicians as one would suspect.  When requested to identify specific physicians, who made such requests, STEWART did not respond.  It seemed to STEWART that physicians always wanted "something for nothing."  It was quite common, according to STEWART for physicians to request "educational grants" which paid for their air travel to attend HIV conferences sponsored by SERONO.  STEWART stated, she was not certain if these physicians actually ever attended the conferences. | Not Redacted |
| **KIM BLACKWOOD'S NOTES:** **PAGE 4:**  "Was John's idea ~ "momentary lapse of judgment" | Will not be introduced in this form. |
| **PAGE 5**: "Cannes - was "one time 'crazy' thing." | Not Redacted |
| **From Agent Blackwood's notes on page 7**: STEWART got complaints – people felt pressured. | Not Redacted |

In the redacted form set forth above, the Government will

**not** refer to the fact that Stewart was requested to review and

explain the following portion of the following, which is Kim

Jackson's typed transcription of a voice-mail message (which was

incorrectly referred to as an e-mail in the Memorandum of

Interview):

> "Voicemail sent by Melissa Vaughn on
> Wednesday, March 3, 1999 regarding JOHN
> BRUENS offer to pay for certain high writing
> MDs flight and hotel in Cannes, France in
> April to attend an HIV Nutrition/Wasting
> program in exchange for 30 patient Rxs during
> our 6 day sales blitz."

Ms. Jackson will also testify to her participation at the March
1, 1999 meeting, the Cannes kickback plan and this voicemail.

The statement about Dr. Corazon is only potentially
inculpatory to defendant Sirockman when it is linked with other
evidence to be introduced at trial.  In and of itself it is not
inculpatory to anyone but Corazon, who is not charged in this
case.  Thus, this statement falls outside Bruton's scope. See
Gray v. Maryland, 523 U.S. 185, 190 (1998) citing Richardson v.
Marsh, 481 U.S. 200, 208 (1987).

During her interview, Stewart also made specific derogatory
statements about co-defendant Sirockman's business practices,
although she did not specifically address his role in the Cannes
scheme at that juncture. Stewart was Sirockman's supervisor and
was responsible for firing Sirockman from his position at Serono.
It is not the Government's intention to introduce these
statements about Sirockman.[3]

---

[3] In footnote 2 on page 7 of the Memorandum in support of
her Motion for Separate Trial, Stewart states that she will seek
to introduce evidence at trial about Sirockman's termination and
business practices, in effect implying that there may be
conflicting defenses.  It is unclear on what basis and how
Stewart could introduce such evidence, or what possible relevance

As a result of Stewart's admissions: Sirockman wants a separate trial, and Bruens and Vaughn want her statements against them excluded or, at the very least, redacted to exclude any specific reference to them.

### 2.    Marc Sirockman's Admissions to New Jersey Investigators:

On December 13, 2001, Sirockman was interviewed by investigators of the State of New Jersey.  During that interview, Sirockman admitted that Serono had a program that he called, "Con France."  Sirockman then described the *quid pro quo* offers made to the doctors to attend the Cannes Conference.  Sirockman told the investigators that, "[o]nly doctors who exceeded their normal prescription rate by a certain percentage were considered for attendance," and, that although he did not know the specific figure, he thought the rate increase was ten percent.  Sirockman identified "Mary Stewart (Vice President of Sales) and other corporate officers" as the ones who "selected the doctors who attended the 'Con France.'"  Sirockman also admitted to investigators that Serono paid all expenses for the doctors, including air fare, hotel and meals, and also provided the doctors with spending money.

As a result of Sirockman's statements during this interview,

---

these statements could have on any defense. If she were to take the stand to explain the reasons she terminated Sirockman, that would obviate any <u>Bruton</u> problem because Sirockman would then have the opportunity to cross-examine Stewart.

Stewart is also requesting a separate trial.[4]

The government proposes to introduce statements made by Sirockman during this interview, but suggests that his statements can also be redacted to alleviate any prejudice to the defendants as follows:

| ORIGINAL STATEMENT | PROPOSED/REDACTED STATEMENT |
|---|---|
| On page 1:  Regarding his employment at Serono:<br><br>After completing his training, Mr. Sirockman was designated as a "Clinical Consultant Metabolic & Immune Therapy" for Serono Laboratories, and assigned to service the South Jersey/Philadelphia area. Serono supplied him with tracking information that listed doctors who prescribed high volumes of anti-wasting drugs.  He was instructed to visit these doctors, educate them on the benefits of using Serostim for treating wasting syndrome, and hopefully have them prescribe Serostim as part of a patient's treatment. After six months he was reassigned to service the North Jersey Area, which included Newark and Paterson. Sirockman's second regional director was Adam Stupak, and in January 1999 Sirockman was promoted to that position (salary $105K/year + commissions). | Not redacted. |

---

[4] Her request is also based upon statements of Bruens and Vaughn during the conspiracy.  *See Section 2B, infra*.

| **ORIGINAL** STATEMENT | **PROPOSED/REDACTED** STATEMENT |
|---|---|
| Dr. Corazon worked at the Peter Ho Clinic in Newark but also had an office in Paterson, and was the biggest prescriber of Serostim in New Jersey. | Not redacted |
| Sirockman entertained doctors by taking them to lunch or dinner, but never gave them any cash payments. ... Clinical Consultants were under intense pressure to meet ever rising goals with emphasis on the 6 milligram vial.  Scheduling symposiums where high prescribers in your account would act as guest speakers, with fees between $1,000 to $1,500, was seen as a way to help meet the goals. Sirockman personally delivered speaker fees, in the form of checks, to doctors in his account who performed the service. | Not redacted |

13

| **ORIGINAL** STATEMENT | **PROPOSED/REDACTED** STATEMENT |
|---|---|
| Serono also ran a program called "Con France" which focused on a 1999 conference held in Cannes, France (Third International Conference on Nutrition and HIV Infection). Only doctors who exceeded their normal prescription rate by a certain percentage were considered for attendance. Sirockman did not know the specific figure but thought that it might have been ten percent. **Mary Stewart(Vice President of Sales) and other** corporate officers selected the doctors who attended the "Con France."  Serono paid for all expenses (air fare, hotel, and meals), and also provided the doctors with spending money.  Dr. Corazon attended the conference, and may Dr. Belt.  Corazon also attended another conference, either in Arizona or Colorado. | Serono also ran a program called "Con France" which focused on a 1999 conference held in Cannes, France (Third International Conference on Nutrition and HIV Infection). Only doctors who exceeded their normal prescription rate by a certain percentage were considered for attendance. Sirockman did not know the specific figure but thought that it might have been ten percent. ... Corporate officers **at Serono** selected the doctors who attended the "Con France."  Serono paid for all expenses (air fare, hotel, and meals), and also provided the doctors with spending money.  Dr. Corazon attended the conference, and maybe Dr. Belt.  Corazon also attended another conference, either in Arizona or Colorado. |
| In addition to his salary, Sirockman also received a quarterly commission based on the total milligrams of Serostim dispensed in his area, as noted by pharmacy tracking services.  The total was then compared to sales goals to arrive at a commission figure.  The same formula was applied to his commission as regional director, using the regional totals. | Not Redacted |

These redactions will eliminate any prejudice to the co-defendants.

14

**B.   Statements Made During the Conspiracy:**

Defendants Stewart and Sirockman also seek either separate trials based upon statements made by John Bruens and Melissa Vaughn during the course of the conspiracy.  The statements are as follows:

**1.   John Bruens Instructions at the March 1, 1999 Meeting:**

The defendants Stewart and Sirockman seek separate trials and/or to exclude or redact testimony concerning statements made by John Bruens, in the presence of Stewart and the Regional Directors, including Vaughn and Sirockman, at the emergency meeting held on March 1, 1999 at the Boston Harbor Hotel.  Two Regional Directors, Adam Stupak and Kimberly Jackson, will testify to the statements by Bruens which set out the Cannes kickback scheme to the Regional Directors.  According to the testimony,

> John Bruens "told the [regional] Directors to ask our top prescribers to put 30 patients on [Serostim] that month immediately, and if they did that they would get a free trip to Cannes, France, for a nutritional AIDS conference that was coming up.

(Grand Jury Testimony of Kimberly Jackson on May 2, 2002). These statements essentially laid out the plan for the conspiracy.  Thus, these statements by Bruens, which are confirmed by the testimony of other witnesses, as well as documentary evidence, are admissible as co-conspirator statements

15

under Fed. R. Evid. 801(d)(2)(E).[5]

**2.    Melissa Vaughn's Voicemail Left on March 3, 1999:**

The evidence to be introduced at trial will show that after the March 1, 1999 meeting at the Boston Harbor Hotel, certain of the Regional Directors began making the Cannes kickback offer to physicians, or, began causing their sales representatives to make the offers.  The persons making the offers met with varying degrees of success and failure.  Two sales representatives from Florida will testify concerning the fact that they were heartily rebuffed by two of the physicians to whom they made the offers.  They will testify that the defendant Melissa Vaughn was their supervisor and the person who caused them to make the offers to these physicians.

Thereafter, on or about March 3, 1999, Vaughn left a "broadcast" voice mail for each of the other regional directors and copied Bruens and Stewart on the call.  Jackson, the regional director who transcribed the voice mail, will testify as to its contents.  During that voice mail Vaughn sets forth in great detail the extremely adverse reaction that two Florida physicians who had received the *quid pro quo* offer of the Cannes trip, had

_____

[5] The defendants indicate they may seek to challenge the admissibility of these statements.  Any such challenge is entirely premature and unfounded.  *See* Argument, Section 3, *infra.*

given to the sales representatives who had made the pitch.[6]  She
identifies the conduct as "unethical, that this is the very thing
that the FDA looks for..."  Also in the course of this voice
mail, Vaughn states among other things that "we will not be doing
this program in the South."  The government will introduce
evidence that Vaughn continued to participate actively in the
conspiracy after she left this voice mail for her colleagues and
her supervisors.  Indeed, she did so mere hours after she left
this voice mail and continued throughout the entire period of the
conspiracy.

**ARGUMENT**

1.    **The Post Conspiracy Statements of Mary Stewart Do Not
      Warrant Granting Sirockman's Motion for Separate Trial
      Or, Bruens and Vaughn's Request to Preclude Admission
      of those Statements.**

The First Circuit in <u>United States v. Smith</u>, 46 F.3d 1223,
1230 (1st Cir.), *cert. denied*, 516 U.S. 864 (1995), held that
"[a] district court should grant a severance under Rule 14 only
if there is a serious risk that a joint trial would compromise a
specific trial right of one of the defendants, or prevent the
jury from making a reliable judgment about guilt or innocence."
<u>Id.</u>, citing <u>Zafiro v. United States</u>, 506 U.S. 534, 538 (1993).
The denial of a motion for severance will be overturned only if

---

[6] Her voicemail is fully set forth in both Stewart's and
Sirockman's Memoranda in support of their motions for separate
trials.  Sirockman at p. 4 and Stewart at p. 8.

the district court's wide discretion is plainly abused, <u>United States v. O'Bryant</u>, 998 F.2d 21, 25 (1st Cir.1993); <u>United States v. Natanel</u>, 938 F.2d 302, 308 (1st Cir.1991),*cert. denied*, 502 U.S. 1079 (1992), depriving the defendant of a fair trial and resulting in a miscarriage of justice. <u>United States v. Tejeda</u>, 974 F.2d 210, 219 (1st Cir.1992); <u>United States v. McLaughlin</u>, 957 F.2d 12, 18 (1st Cir.1992).

On the other hand, the Confrontation Clause of the Sixth Amendment guarantees a criminal defendant the right "to be confronted with the witnesses against him" and, the right to confrontation is embodied in the right to cross-examination witnesses.[7] <u>Pointer v. Texas</u>, 380 U.S. 400, 404 (1965). For that reason, out-of-court statements of non-testifying co-defendants may be admitted against criminal defendants only in certain limited circumstances. See <u>Crawford v. Washington</u> 541 U.S. at 36.

Defendants Bruens, Vaughn and Sirockman assert that the admission against them of Mary Stewart's statements in a joint trial will violate their Sixth Amendment protections under the

---

[7] Ordinarily, a witness whose testimony is introduced at a joint trial is not considered to be a witness "against" a defendant if the jury is instructed to consider that testimony only against a co-defendant. <u>Richardson</u>, 481 U.S. at 206-207. This accords with the almost invariable assumption of the law that jurors follow their instructions, <u>Francis v. Franklin</u>, 471 U.S. 307, 325, n. 9 (1985), which has been applied by the Supreme Court in many varying contexts.

18

Confrontation Clause.  Therefore, Sirockman requests a separate
trial and Bruens and Vaughn request that the statements be
excluded in their entirety.  The defendants rely upon Bruton v.
United States, 391 U.S. at 136-37, which restricts the
circumstances in which a defendant's out-of-court confession may
be admitted in a joint trial.

The First Circuit recently reiterated the parameters of
Bruton issues in United States v. Vega Molina, 407 F.3d 511, 519
(1st Cir. 2005).  The court recognized the well-established rule
that the out-of-court statements of a non-testifying defendant,
even if admissible against the declarant, may not be used against
a jointly tried co-defendant unless otherwise independently
admissible against that co-defendant. See Lilly v. Virginia, 527
U.S. 116, 124 (1999); Bruton, 391 U.S. at 128; see also Crawford,
124 S.Ct. at 1374 (displacing prior case law and holding that the
Confrontation Clause categorically bars the introduction of
testimonial hearsay unless the accused previously has had the
opportunity to cross-examine the declarant).

In Vega Molina, the First Circuit held that a defendant's
out-of-court statements may be introduced at a joint trial,
provided that (i) the district court instructs the jury not to
consider the statements against any defendant other than the
declarant and (ii) the statements are not so powerfully
inculpating of the other defendants that there would be

19

substantial doubt as to whether the jury could abide by a limiting instruction. Bruton, 391 U.S. at 135-37. Under this paradigm, a defendant's out-of-court confession generally will be admitted if it is redacted to delete the co-defendant's name and any reference, direct or indirect, to his or her existence. Richardson v. Marsh, 481 U.S. 200, 211 (1987). The First Circuit noted that it does not allow a prosecutor merely to delete a co-defendant's name. See, e.g., Gray v. Maryland, 523 U.S. 185, 192 (1998) (holding that simply replacing a co-defendant's name with a symbol or a blacked-out space is insufficient to wrest an inculpatory statement from Bruton's precedential orbit). The First Circuit stated in Vega Molina that the application of Bruton, Richardson, and Gray to redacted statements that employ words such as "other individuals" or "another person" requires careful attention to both text and context, that is, to the text of the statement itself and to the context in which it is proffered.

> The mere fact that the other defendants were on trial for the same crimes to which the declarant confessed is insufficient, in and of itself, to render the use of neutral pronouns an impermissible means of redaction. A particular case may involve numerous events and actors, such that no direct inference plausibly can be made that a neutral phrase like 'another person' refers to a specific co-defendant." See, e.g., United States v. Sutton, 337 F.3d 792, 799-800 (7th Cir.2003). A different case may involve so few defendants that the statement leaves little doubt in the listener's mind about the

> identity of "another person." *See, e.g.*,
> United States v. Vejar-Urias, 165 F.3d 337,
> 340 (5th Cir.1999).

Vega Molina, 407 F.3d at 519-520.

A statement is powerfully incriminating only when it is inculpatory on its face. Richardson, 481 U.S. at 207. The First Circuit noted in Vega Molina that the confession in Bruton fit that description because it identified both the declarant and his co-defendant by name as the perpetrators of the crime. Vega Molina, 407 F.3d at 520 *citing* Bruton, 391 U.S. at 124. The question here is whether this evidence is of the sort to which Bruton applies, that is, evidence that has the "'powerfully incriminating' effect of one accomplice pointing the finger directly at another, without subjecting himself to cross-examination." United States v. Limberopoulos, 26 F.3d 245, 253-254 (1st Cir. 1994)(citing cases); United States v. DiGregorio, 605 F.2d 1184, 1190 (1st Cir.)(quoting Bruton, 391 U.S. at 135), *cert. denied*, 444 U.S. 937 (1979); see also United States v. Nason, 9 F.3d 155, 160 (1st Cir.1993), *cert. denied*, 510 U.S. 1207 (1994); United States v. Barnett, 989 F.2d 546, 558 (1st Cir.), *cert. denied*, 510 U.S. 850 (1993). Statements that are incriminating only when linked to other evidence in the case do not trigger application of Bruton's preclusionary rule. Richardson, 481 U.S. at 208. Each case must be subjected to individual scrutiny.

Under the facts of this case, with a limiting instruction and the proposed redactions to Stewart's statements proposed by the United States, the Court should conclude that these statements are not so inculpatory as to prevent their admission against the declarant in a joint trial nor do they warrant a separate trial for Sirockman.  The proposed redacted statements are not so "powerfully incriminating" so as to be inculpatory on their face.  As proposed, the statements do not name any co-defendant, nor do the statements link the co-defendants to the crimes charged.  It is only with other evidence that the co-defendants are linked to the Cannes kickback offer that Stewart acknowledges in her statements.  Thus, in this form, the statements do not trigger the application of Bruton's exclusionary rule. See Vega Molina, 407 F.3d at 510; United States v. Williamson, 339 F.2d 1295, 1302-1304 (11th Cir. 2003)(post-arrest statement made by administrator acknowledging that he had been paid for arranging for company to receive a special rate did not facially implicate his alleged co-conspirators as persons making payments and did not violate co-conspirators' Bruton confrontation rights).

The First Circuit has recognized that there are instances in which a redacted statement of a non-testifying co-defendant can be admitted in a joint trial.  The mere fact of corroboration is not enough to warrant finding a Bruton violation. *See, e.g.,*

United States v. Limberopoulos, 26 F.3d at 253-254; United States v. Rawwad, 807 F.2d 294, 296 (1st Cir. 1986), *cert. denied*, 482 U.S. 909 (1987); United States v. DiGregorio, 605 F.2d at 1190. As set forth above, although the statements made by Mary Stewart during her non-custodial interrogation by agents of the FBI clearly fall within the definition of "testimonial" hearsay as set forth by the U.S. Supreme Court in Crawford, 541 U.S. at 53, with a proper limiting instruction and the suggested redaction, any prospective Bruton confrontation clause violation can be avoided.  Thus, Marc Sirockman's Motion for Separate Trial and Bruens and Vaughn's Joint Motion To Preclude the Statements of Mary Stewart should be denied.

### 2.   The Post-Conspiracy Statements of Marc Sirockman Do Not Require A Separate Trial for Mary Stewart

Stewart's primary reason for requesting a separate trial is because Marc Sirockman has directly inculpated her in his statement to the New Jersey investigators.  His statement identified Mary Stewart as one of the corporate officer who was responsible for "selecting the doctors" for the Cannes kickback offer.  In the redacted form proposed by the United States, however, all references to Stewart have been deleted.  Therefore, for the same reasons as set forth above, with the proper limiting instruction, and the redactions proposed by the Government, Sirockman's statements can be admitted against Stewart in a joint trial without violating her Bruton confrontation rights, nor

those of Bruens and Vaughn.   Thus, this motion should be denied.

**3.    The Bruens and Vaughn Statements Do Not Implicate
<u>Bruton</u> and its Progeny And Are Admissible Against All
Defendants**

The statements of Bruens and Vaughn form the basis of

Stewart and Sirockman's requests for separate trials.   As

discussed below, both the Bruens and Vaughn statements are

admissible against each defendant, either because the statement

is not hearsay, or, in the alternative, because it is a co-

conspirator statement.   The admission of these statements

certainly does not warrant defendants Sirockman and Stewart a

separate trial.

The defendants suggest in their various memoranda that

these statements were not made "in furtherance of the conspiracy"

and therefore do not come within Fed. R. Evid. 801(d)(2)(E).

First, any ruling on this claim is premature. <u>United States v.</u>

<u>Ciampaglia</u>, 628 F.2d at 638 (<u>Petrozziello</u> rulings are to be made

at the conclusion of all the evidence); <u>U.S. v. Cranston</u>, 686

F.2d at 57-58 (same).   Moreover, the analysis set forth in the

defendants' memoranda is far too simplistic to be considered in

the context of these motions.   Indeed, the defendants' claims are

not supported by the evidence and are not legally correct.

**Bruens' Statements:**

Bruens statements were certainly made in furtherance of the

conspiracy, indeed it is the essence of a conspiratorial

24

statement.  Bruens statements were made during the emergency meeting that was called by Bruens and Stewart on March 1, 1999 for the purpose of pitching the $6 million in 6 day sales program to the Regional Directors and others.  This plan included the Cannes kickback scheme.  Bruens and Stewart intended to, and did, solicit and obtain the defendant's (among others) agreement to participate in the Cannes kickback plan.  As mentioned, Bruens, essentially told his co-workers and subordinates that they needed to increase sales immediately.  He suggested the plan, "we need to identify some high prescribing physicians who can write 30 prescriptions of Serostim in a short period of time to make the $6 million in 6 days sales goal.  In return, we will pay their way to the Cannes Conference."  Once the plan was made and agreed to, they set out to accomplish the plan – and the conspiracy was hatched.  The evidence will show this to be the case.  Moreover, these statements and actions of Bruens will be testified to by several witnesses and are supported by documentary evidence that is contemporaneous with and/or follows thereafter to corroborate the plan (conspiracy) made during the meeting.  These statements are the epitome of the co-conspirator statement.  The defendants claims that these statements are not "in furtherance of the conspiracy" are completely without merit.

**Melissa Vaughn's Voice Mail:**

The defendants claim any testimony as to Melissa Vaughn's

25

voice mail is inadmissible hearsay. They are incorrect.

First, Melissa Vaughn statement is not hearsay at all.
Vaughn's statement will not be offered for the truth of the
matter asserted, rather it will be offered to show knowledge,
intent, motive and consciousness of guilt.

Second, even if it were deemed to be offered in support of
the truth of the matter asserted, it nonetheless is not hearsay
because it is a co-conspirator statement. At the time that the
voice mail was sent by Vaughn (to the other regional directors,
Bruens and Stewart), the "South" (her region) had already taken
overt acts to participate in the illegal scheme by offering the
Cannes kickback to two or more doctors in Florida. Her message
confirms these facts. Moreover, the government will seek to
introduce evidence that Vaughn continued to personally
participate in the Cannes kickback scheme after the voice mail
was sent to the others.

Vaughn's statement can be interpreted in several ways as a
co-conspirator statement. She was warning her co-conspirators
that this plan was not being well-received by its audience, the
targeted doctors. She states in the voice mail that she received
"two very sobering" reports from the sales representatives she
ordered to make the Cannes offer to two Florida doctors. Her
voice mail relates what the sales representatives who made the
offer reported, their "horrible experience" when they made the

offer which Vaughn describes as, "one of the best ways we could possible present it." She advises her co-conspirators that "this is the very thing that the FDA looks for."

These statements both confirm her participation in the kickback offer and warn others about how the offer is being received. A confirmation of participation, as well as a statement of warning, both are statements made in furtherance of the conspiracy.

Second, because the offer for the Cannes kickback was not well-received, she appears to be concerned about what the fallout of the offer will be. She made it known that she was aware of the illegal nature of the actions, and advised the others. Thereafter, she attempted to cover her own actions in the scheme with several false exculpatory statements – statements that will be contradicted by evidence to be introduced by the Government.

Rather than attempting to "frustrate" the purpose of the conspiracy, her voice mail confirms that she had already participated in the scheme. The portions of her voice mail that are false exculpatory, do not frustrate the conspiracy but rather indicate her consciousness of guilt. These statements come squarely within the co-conspirator hearsay exception and are admissible. See United States v. Kaplan, 832 F.2d at 687; see also United States v. Piper, 298 F.3d at 54; United States v. Fahey, 769 F.2d at 839.

27

Thus, the statements of Bruens and Vaughn form no basis to support either Stewart's or Sirockman's request for a separate trial, nor should these statements be excluded. The defendants' motions should be denied.

### CONCLUSION

Based upon the foregoing, the United States requests the Court to deny the Defendants Mary Stewart and Marc Sirockman's Requests for Separate Trials and the Defendants Bruens and Vaughn's Motion to Preclude Admission of Statements Made By Co-defendant Mary Stewart.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney


By: /s/ Mary Elizabeth Carmody
MARY ELIZABETH CARMODY
SUSAN M. POSWISTILO
Assistant U.S. Attorneys

### CERTIFICATE OF SERVICE

I hereby certify that these documents filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).


Dated: October 17, 2006      /S/Mary Elizabeth Carmody
MARY ELIZABETH CARMODY
Assistant United States Attorney