UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                    )
**UNITED STATES OF AMERICA**        )
                                    )
                                    )
v.                                  )   Criminal No. 05-10102-JLT
                                    )
                                    )
**JOHN BRUENS, MARY STEWART, MARC** )
**SIROCKMAN, MELISSA VAUGHN**       )
                                    )
            **Defendants.**         )
_____ )

**UNITED STATES' OPPOSITION TO DEFENDANTS'**
**MOTION TO EXCLUDE TESTIMONY OF ADAM WHITEHURST**

The United States of America, by its attorney, Michael J. Sullivan, United States Attorney for the District of Massachusetts, opposes the joint motion by the defendants to exclude the testimony of Adam Whitehurst. The grounds for its opposition are set forth below.

**STATEMENT OF THE CASE**

**1.   Introduction**

On April 14, 2005, an eight-count indictment was returned against the defendants, John Bruens ("Bruens"), Mary Stewart ("Stewart"), Melissa Vaughn ("Vaughn"), and Marc Sirockman (Sirockman), (collectively "the defendants"). Count One of the Indictment charged the defendants with conspiracy to offer and pay illegal remunerations to physicians, in violation of 18 U.S.C. § 371 and Counts Two through Eight charged the respective

defendants with substantive counts of illegally making offers and payments of remuneration to physicians, in violation of 42 U.S.C. § 1320a-7b(b)(2)(A). Stewart and Bruens are charged in all 8 counts of the indictment. Vaughn is charged in Counts 1, 2 and 3; Sirockman is charged in Counts 1, 4 and 5.

**2.   Statement of Facts**

The indictment in this case alleges the following facts:

In March, 1999, each of the defendants was a high-level employee of Serono Laboratories, Inc. ("Serono"), a biotechnology and pharmaceutical company based in Norwell, Massachusetts. Bruens was the Vice-President of Marketing and Stewart was the Vice-President of Sales in a business unit known as Metabolic and Immune Therapy ("M&IT"). Vaughn and Sirockman were Regional Directors - Vaughn was in charge of the Southeast Region and Sirockman was in charge of the Northeast Region.

M&IT was responsible for marketing and selling the drug Serostim, a drug that in August of 1996 received accelerated approval from the U.S. Food and Drug Administration ("FDA") only to treat a condition known as AIDS wasting. By February, 1999, Bruens, Stewart and other executives were aware that sales of Serostim were falling significantly short of their sales goals. In order to rectify the situation, Bruens, Stewart and others called an emergency meeting at the Boston Harbor Hotel for March 1, 1999, and summoned Defendants Sirockman, Vaughn and other

Regional Directors to attend. During the meeting, Bruens and Stewart informed the Regional Directors that they needed to "dig their way out" of the fiscal crisis, and proposed a program by which Serostim would reach a sales goal of "$6 million in 6 days."

As part of the plan to achieve this sales goal, the defendants, and others, implemented a plan in which they asked certain doctors to write up to 30 prescriptions of Serostim in exchange for an all-expense paid trip to Cannes, France (paid for by Serono) to attend the 3rd Annual Conference on Nutrition and HIV Infection ("the Cannes Conference"). Defendants Vaughn and Sirockman, as Regional Directors, made the offer to individual doctors in their region to write the prescriptions in return for the trip to Cannes, or caused their sales representatives to extend the offer. Bruens and Stewart required the Regional Directors to report back to them on a daily basis as to the number of prescriptions obtained from the targeted doctors, among others. As part of the conspiracy, the Defendants caused Serono to pay for the travel expenses of the physicians and their guest(s) who actually attended the Cannes Conference.

3.  **The Investigation**

As part of the investigation against the defendants and Serono, Inc., the government presented the testimony of Adam Whitehurst to the grand jury on January 6, 2004. During that

presentation, Whitehurst voluntarily appeared and testified, without an attorney.

On April 8, 2005, the United States reached an agreement in principle with Serono, Inc., as to a global resolution of criminal and civil charges. As part of that agreement, the company agreed to plead guilty to two criminal conspiracies, including a conspiracy to offer and pay the Cannes kickback, as well as to pay $704,000,000. On October 17, 2005, an information was filed against Serono Labs, Inc., and on December 15, 2005, Serono Labs, Inc. pled guilty and was sentenced.

The instant indictment against the Defendants was returned on April 14, 2005.

After the return of the instant indictment, the government continued with its investigation in order to present to the grand jury evidence against other individuals who may have been part of the charged conspiracy or otherwise culpable for violations of the anti-kickback laws, or other criminal statutes. To that end, the government again presented the testimony of Whitehurst on June 24, 2005 ("the second Whitehurst testimony"). This time, Whitehurst had an attorney and had been immunized.

As set forth in the attached Declaration of Assistant U.S. Attorney Mary Elizabeth Carmody, the second Whitehurst testimony was elicited for one, and only one, purpose – that is, to obtain

additional evidence against a proposed new defendant.[1]  This individual had agreed to a limited waiver of the statute of limitations, until July 1, 2005.

After receipt of Whitehurst's testimony, and due to the unforeseeable circumstance of the hospitalization of AUSA Carmody, the grand jury was not asked to return an indictment against this target by July 1, 2005.  Thereafter, the government could no longer present the indictment to the grand jury as the statute had expired.  Accordingly, the instant indictment was not superseded, and no additional indictments were returned.

## ARGUMENT

### THE PRIMARY PURPOSE OF THE SECOND WHITEHURST WHITEHURST TESTIMONY WAS TO PRESENT EVIDENCE RELATING TO CRIMINAL CONDUCT OF ANOTHER INDIVIDUAL

The defendants accuse the government of misusing the grand jury by presenting the second Whitehurst testimony.  Without any basis, they allege that the government used the grand jury for trial preparation against the defendants.  Because of this, they request that Adam Whitehurst should be barred from testifying at their trial.

---

[1] Simultaneously with this opposition, the government has submitted a Motion to File Declarations *Ex Parte* and under seal. These declarations set forth information privileged under the attorney-client, work product, and deliberative process privileges, which the government does not waive.  The declarations provide to the Court a fuller version of the facts surrounding its decision to recall Adam Whitehurst to the grand jury.

In United States v. Flemmi, 245 F.3d 24 (1st Cir. 2001), the First Circuit recognized that grand jury proceedings are afforded a presumption of regularity, both before and after an initial indictment.  United States v. Flemmi, 245 F.3d at 28, *citing*, United States v. Johnson, 319 U.S. 503, 512 (1943).  Indeed, as the First Circuit recognized, superseding indictments alleging new charges or naming new defendants are "common fare."  Id.  Whether or not a superseding indictment is returned, however, is not determinative as to whether this presumption of regularity is overturned.  See, United States v. John Doe, 455 F.2d 1270, 1274-75 (1st Cir. 1972), *citing,* United States v. Procter & Gamble Co., 356 U.S. 677, 683 (1958) ("even when a grand jury produces evidence but does not return an indictment, that is insufficient to embargo its fruits.").

A party alleging grand jury abuse bears a heavy burden to overcome the presumption of regularity.  United States v. Flemmi, 245 F.3d at 28.  If the government's "primary purpose" for utilizing the grand jury after indictment is for a continuing investigation of new defendants and/or charges, the party has not met his or her burden.  Id., See also, In re Grand Jury United States v. Ahern, 814 F.2d 61, 70 (1st Cir. 1987).  If the party shows, however, that the government used a grand jury for the primary purpose of helping the government prepare an indictment for trial the presumption will be overcome.  Id.

6

The defendant's claim that the government misused the grand jury in this case is unfounded. The government did not use the grand jury proceeding to buttress its trial preparation of this case. Rather, it used the grand jury in order to determine whether it had sufficient evidence to obtain an indictment against another individual. As set forth in the attached Declaration of AUSA Carmody, and more fully explained in the declarations filed *ex parte* and under seal, the second Whitehurst testimony was presented solely for the purpose of investigating the evidence against a possible new defendant. Although the grand jury did not eventually return an indictment against this individual, that does not negate the fact that the grand jury process was properly used in its investigatory capacity. See, United States v. John Doe, 455 F.2d at 1274-75. Further, the fact that the second Whitehurst testimony incidentally produced evidence that the government may use at trial of the defendants does not render that evidence inadmissible. United States v. Flemmi, 245 F.3d at 28 ("[i]t follows logically that, as a general rule, 'evidence obtained pursuant to [an ongoing grand jury] investigation may be offered at the trial on the initial charges'")(citation omitted); United States v. Doe, 455 F.2d at 1273 ("the fact that the government may derive incidental benefit from a grand jury proceeding does not preclude its use").

Because the record is clear that the primary purpose of the

second Whitehurst testimony was to elicit information regarding possible charges against an individual other than the defendants, there was no misuse of the grand jury.  Accordingly, the defendants' motion should be denied.

## CONCLUSION

Based upon the foregoing, the defendants' motion to preclude testimony of Adam Whitehurst should be denied.

MICHAEL J. SULLIVAN<br>
United States Attorney

By:   /s/ Susan M. Poswistilo
      MARY ELIZABETH CARMODY
      SUSAN M. POSWISTILO
      Assistant U.S. Attorneys


### CERTIFICATE OF SERVICE

I hereby certify that these documents filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated: 10/17/2006           /s/ Susan M. Poswistilo
                            SUSAN M. POSWISTILO
                            Assistant United States Attorney

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

```
_____
                                  )
UNITED STATES OF AMERICA          )
                                  )
                                  )
                                  )
v.                                )   Criminal No. 05-10102-JLT
                                  )
                                  )
JOHN BRUENS, MARY STEWART, MARC   )
SIROCKMAN, MELISSA VAUGHN         )
                                  )
             Defendants.          )
_____ )
```

### DECLARATION OF MARY ELIZABETH CARMODY

I, Mary Elizabeth Carmody, pursuant to 28 U.S.C. § 1746, under the pains and penalties of perjury, state:

1. I am an Assistant United States Attorney in the District of Massachusetts. I am currently assigned to the Health Care Fraud unit in the Boston office, and have been so assigned since June, 2003.

2. As part of my duties as an Assistant U.S. Attorney, I was responsible for the investigation and prosecution of Serono Labs, Inc. and related matters, including the investigation and prosecution of the above-captioned defendants. Since June, 2003, I was the lead criminal attorney assigned to this proceeding from the United States Attorney's Office. My responsibilities included, among other things, conducting the investigation, presenting the evidence to the federal grand jury and making recommendations for prosecution.

3. On April 14, 2005, the federal grand jury returned an indictment against John Bruens, Mary Stewart, Melissa Vaughn and Mark Sirockman ("the defendants"). At the time the indictment was returned, I intended to continue with the investigation against other individuals, one of whom I will refer to as "X".

4. During my course of dealings with the attorneys for X, I sought a waiver of the statute of limitations. On March 16, 2005, X agreed to waive the statute of limitations until June 1, 2005. On May 27, 2005, X agreed to a second, but very limited, waiver of the statute until July 1, 2005, and only under certain conditions.

    5.   I sought the testimony of Adam Whitehurst on June 28, 2005, solely for the purpose of obtaining prosecutable evidence against X.  No additional evidence was to be sought against the defendants.

    6.   On the evening before Adam Whitehurst's anticipated testimony, I became seriously ill and was hospitalized from June 27, 2005 through June 30, 2005.  As a result, another Assistant U.S. Attorney elicited the testimony from Whitehurst on June 28, 2005.

    7.   I did not return to the office until July 5, 2005.  By that time, the statute of limitations had expired against X, and we were barred from presenting an indictment to the grand jury.

    8.   At the time the decision was made to present Whitehurst's testimony on June 28, 2005, I was aware of the requirement that I was not permitted to use the grand jury for trial preparation.  At no time, did I intend to use the grand jury for this purpose.

    9.   My only purpose for recalling Whitehurst to the grand jury on June 28, 2005, was to obtain evidence against X.

    I declare under the pains and penalties of perjury that the foregoing is true and correct.  Signed in Boston, MA, this 16th day of October, 2006.

                                        _____
                                        MARY ELIZABETH CARMODY