# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

_____

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | NO.  05-CR-10102 JLT |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN BRUENS, MARY STEWART, | ) | |
| MELISSA VAUGHN, and | ) | |
| MARC SIROCKMAN | ) | |
| | ) | |
| Defendants. | ) | |

_____)

## DEFENDANT MARK SIROCKMAN'S MOTION *IN LIMINE* TO EXCLUDE ALLEGED 404(b) EVIDENCE AGAINST DEFENDANT SIROCKMAN

Defendant Marc Sirockman hereby moves *in limine* to exclude evidence of alleged Rule 404(b) evidence that the Government has indicated it plans to offer at trial.  See Letter of Assistant U.S. Attorney Mary Elizabeth Carmody to Counsel for all Defendants, dated March 12, 2007 (the "March 12 letter"), attached hereto as Exhibit A.  Defendant Sirockman seeks to exclude this proposed evidence, some of which fails to comply with the specificity requirements of Local Rule 117.1, because the acts referenced in the March 12 letter are completely different from, and unrelated to, the subject matter of the Indictment—an alleged conspiracy to provide physicians with a free trip to a medical conference in Cannes, France (the "Cannes conference") in return for writing a certain number of prescriptions for Serostim.  Because the Government's proposed evidence has no bearing on "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident," it constitutes inadmissible character evidence which must be excluded pursuant to Federal Rule of Evidence 404(b).

1

## <u>INTRODUCTION</u>

The Government has repeatedly and consistently emphasized the narrow scope of the charges in this case, and has represented to defense counsel and to the Court that the Government's proof at trial will be limited to those charges. During a pre-trial conference on March 6, 2006, the Government responded to Defendants' motion for early disclosure of Rule 404(b) evidence as follows:

> **AUSA Carmody:** ***This indictment is all about the Cannes conference*** and this is what is charged in the indictment and the defendants are put on notice as to what they're charged to defend against.
>
>            \* \* \*
>
> Your Honor, if I could say two things. First of all, ***I've told counsel right from the start and in every one of our discovery conferences that this is about the Cannes conference.*** That's what this conspiracy is and that's what the charges are against them. So they know that.

Mot. Hr'g Tr., 8:7-10, 12:6-10, March 6, 2006 (emphasis added).

The scope of the Government's proof was again raised during a motion hearing on January 16, 2007, during which this Court indicated that it would narrowly constrain the Government's proof to the specific acts alleged in the Indictment.

> **The Court:** I alert the government to the likelihood that I am not going to be letting in a lot of evidence.
>
>            \* \* \*
>
> ***But the only thing that really counts is somebody goes in to see the doctors and say, hey, how would you like to go to France.***
>
> **AUSA Carmody:** That's right, Your Honor.

| **The Court:** | So that is what we are going to be looking to hear. ***And I am probably not going to be permitting testimony that doesn't go right to the heart of that stuff.*** |
|---|---|
| **AUSA Carmody:** | And that's not our intention, Your Honor. |

Mot. Hr'g Tr., 39:21-22, 40:12-21, Jan. 16, 2007 (emphasis added).

In spite of this representation, the Government has informed defense counsel that it proposes to offer evidence against Sirockman that it claims "is either inextricably intertwined with the charged conspiracy, or … offered for other purposes, including, but not limited to, motive, opportunity, knowledge, intent, or modus operandi." Ex. A at 1-2.[1/] However, none of the Government's proposed evidence relates to a scheme similar to that alleged in the Indictment—a quid pro quo offer to physicians to attend the Cannes Conference. The proposed evidence is instead a transparent attempt to introduce evidence of other "bad acts" in order to persuade the jury that Sirockman acted in conformity therewith. This character evidence is therefore inadmissible under Federal Rule of Evidence 404(b) and must be excluded.

## **ARGUMENT**

In the First Circuit, evidence of other bad acts "is inadmissible as a general rule, but may be admissible if it has special probative value beyond mere relevance that does not derive from bad character or propensity." United States v. Frankhauser, 80 F.3d 641, 648 (1st Cir. 1999) (citations and internal quotation marks omitted). Courts will employ a two-part test in determining whether evidence of other bad acts is admissible under Rule 404(b): (1) it must be probative of an issue in the case without including bad character or propensity in inferential claim, and (2) its probative value must not be substantially outweighed by the danger of undue

---

[1/]     Although the government states in the March 12 letter that the proposed evidence "does not constitute Rule 404(b) evidence," it then proceeds to recite the familiar admissibility standard under Rule 404(b), namely that the proposed evidence is "being offered for other purposes, including, but not limited to, motive, opportunity, knowledge, intent, or modus operandi."

prejudice, confusion of issues, or misleading the jury.  See United States v. Aguilar-Aranceta, 58

F.3d 796, 798 (1st Cir. 1995).  None of the Rule 404(b) evidence the Government proposes to

admit against Sirockman satisfies this test.

In the March 12 letter, the Government described its offer of proof against Sirockman as

follows:

### C.     Evidence Relating to Marc Sirockman

The government intends to offer evidence that Marc
Sirockman made many payments to Dr. Corazon, in addition to the
trip to Cannes, in return for writing Serostim scripts.

### II.     Statements of Marc Sirockman

* * *

Marc Sirockman told his sales representatives that they
were to do "whatever it takes" to sell Serostim prescriptions; he
told a sales representative that the representative should call the
doctors and offer them $50 per prescription for every prescription
they wrote; and told a sales representative that he should promise
that Serono would purchase a digital camera for a doctor if the
doctor put 20 patients on Serostim.

As detailed below, these alleged "similar acts" are in no way "inextricably intertwined

with the charged conspiracy" to send physicians to a medical conferences in Cannes in return for

writing a certain number of prescriptions for Serostim.  Nor does this evidence relate to issues of

"motive, opportunity, knowledge, intent or modus operandi" regarding the Cannes conference.


### I.     Evidence That Defendant Sirockman Made Payments To Dr. Corazon Is Not Admissible Pursuant To Federal Rule Of Evidence 404(b)

In the March 12 letter, the Government discloses its intent to offer evidence "that Marc

Sirockman made many payments to Dr. Corazon, in addition to the trip to Cannes, in return for

writing Serostim scripts."  Ex. A at 2.  As a threshold matter, this cursory and generalized

description of the Government's proposed evidence makes it impossible for defense counsel to respond to the admissibility of these materials.  In addition, the description fails to comply with the requirements of Local Rule 117.1(A)(4)(b), which requires the Government to notify the defendants of the approximate date, time and place of the crime, wrong or act proposed to be offered in evidence pursuant to Rule 404(b).  As of this date, the Government has not responded to defense requests for greater specificity regarding these alleged payments (see letter to AUSA Carmody dated March 20, 2007, attached as Exhibit B), thus the evidence must *per se* be excluded because the Government has both failed to comply with the local rules and has failed to satisfy any relevant admissibility standard.[2]  But even without the benefit of knowing the details of the alleged payments, it is obvious that the referenced payments to Dr. Corazon are not "inextricably intertwined with the charged conspiracy" because, by the Government's definition, they would have been made "***in addition to*** the trip to Cannes."  Ex. A at 2 (emphasis added).  Significantly, the Government has not alleged that these additional payments to Dr. Corazon had anything to do whatsoever with the trip to Cannes.

Moreover, any alleged payments to Dr. Corazaon do not satisfy the 404(b) two-part test because they do not demonstrate "motive, opportunity, knowledge, intent or modus operandi" regarding the alleged conspiracy to make quid pro quo offers to physicians.  While defense counsel can only guess at which payments the Government references, it suffices to note that numerous legitimate reasons exist for Sirockman to have made payments to Dr. Corazon, including payments for speaking engagements, and participation in investigators' meetings or advisory councils.

---

[2]  The Government's only response to defense counsel's March 20, 2007 letter is that it would *consider* providing more detail of the alleged payments.  As of the filing of this motion, AUSA Carmody had not yet indicated whether the government would provide this information.

Further, even if the alleged payments described in the March 12 letter are deemed to have been improper, they formed no part of the manner or means of the alleged conspiracy to offer free trips to Cannes to frequent prescribers of Serostim. The Government admits as much in the March 12 letter in identifying the evidence as "payments to Dr. Corazon, *in addition to the trip to Cannes*, in return for writing Serostim scripts." Ex. A at 2 (emphasis added). Any such offers are outside the scope of this case and therefore have no probative value to the conduct charged in the Indictment. See United States v. Testa, 548 F.2d 847, 851 (9th Cir. 1977) ("[A]cts not part of the conspiracy charged may not be used as evidence that the accused committed the acts charged in the indictment."). Because this proposed evidence can have no other purpose but to suggest to the jurors a criminal character on the part of Sirockman, the risk of unfair prejudice substantially outweighs its probative impact. For this reason, it is inadmissible. See United States v. Sebaggala, 256 F.3d 59, 67 (1st Cir. 2001) (stating that even "bad act" evidence with special relevance to the case must be excluded under Federal Rule of Evidence 403 if "its prejudicial impact substantially outweighs its likely probative worth").

## II.    The Identified Statements Of Defendant Sirockman Have No Bearing On Motive, Opportunity, Knowledge, Intent Or Modus Operandi With Respect To The Cannes Conference

The Government also has indicated that it intends to offer evidence relating to certain statements by Sirockman:

> Marc Sirockman told his sales representatives that they were to do "whatever it takes" to sell Serostim prescriptions; he told a sales representative that the representative should call the doctors and offer them $50 per prescription for every prescription they wrote; and told a sales representative that he should promise that Serono would purchase a digital camera for a doctor if the doctor put 20 patients on Serostim.

Ex. A at 2.  None of these statements has any connection to the conspiracy or other acts alleged in the Indictment.  To the extent that any of these statements constitutes "bad act" evidence, they must be excluded because they relate to acts other than those charged in the Indictment, and because their probative value is substantially outweighed by the risk of unfair prejudice to Sirockman.  See Fed. R. Evid. 403.

The first statement, instructing sales representatives to do "whatever it takes" to sell Serostim, is highly ambiguous.  Regardless of whatever undertones the Government might suggest are present, there is no indication that this statement was anything more than a motivational platitude meant to inspire Serono's sales representatives.  This statement is no more probative of Sirockman's participation in the alleged conspiracy than would be exhortations to "go the extra mile" or "think outside the box."   It does not indicate "motive, opportunity, knowledge, intent or modus operandi" regarding the Cannes conference.  Even assuming, arguendo, that it somehow is probative of an issue in this case, the probative value will be outweighed by the danger of undue prejudice, confusion of issues, or misleading the jury.  See Aguilar-Aranceta, 58 F.3d at 798.  This is due to the high probability that when jurors hear the proposed statement, they will conclude that Sirockman had a criminal propensity to do, and to instruct his people to do, "whatever it takes" to sell Serostim, regardless of the legality of the conduct, or the context in which the statement was made.  The statement should therefore be excluded from evidence as creating a substantial danger of unfair prejudice.  See Fed. R. Evid. 403.

The second and third statements, involving offers to physicians in return for prescribing Serostim, must also be excluded.  As is the case with the proposed evidence discussed above in Section I, these statements do not demonstrate "motive, opportunity, knowledge, intent or modus

operandi" regarding the alleged conspiracy to make quid pro quo offers to physicians to attend the Cannes conference. Indeed, these statements have no connection whatsoever to the Cannes conference and constitute nothing more than unfairly prejudicial propensity evidence. The relevance of these statements depends entirely upon the inference that Sirockman's instructions to offer $50 or a digital camera to physicians in exchange for writing Serostim prescriptions makes it more likely than not that he participated in the unrelated conspiracy to offer trips to Cannes. These statements do not prove that Sirockman committed the acts described in the Indictment—acts that are all centered upon the Cannes conference. See United States v. Karas, 950 F.2d 31, 37 (1st Cir. 1991) (holding that it was error to admit 404(b) evidence of the defendant's prior cocaine trafficking in a prosecution in which he was charged with conspiracy to possess with intent to distribute marijuana). Admitting these statements into evidence would almost certainly lead jurors to the impermissible conclusion that Sirockman had a propensity to engage in criminal behavior. As the probative value of these statements is substantially outweighed by the risk of unfair prejudice, confusion of the issues, and misleading the jury, they are not admissible. See Fed. R. Evid. 403, 404(b).

## III.    Conclusion

WHEREFORE, Defendant Sirockman respectfully requests that this Court exclude the evidence of alleged "similar acts" that the Government has stated it intends to offer in evidence.

Respectfully submitted,

**MARC SIROCKMAN,**
By his attorneys,
  /s/ McKenzie E. Webster
Tracy A. Miner
McKenzie E. Webster
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY
 AND POPEO, P.C.
One Financial Center
Boston, MA  02111

**Dated:**  March 22, 2007

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing motion was filed electronically in compliance with ECF procedures on this 22nd day of March 2007.

  /s/ McKenzie E. Webster

3998056v.3



**U.S. Department of Justice**

*Michael J. Sullivan*
*United States Attorney*
*District of Massachusetts*

Main Reception: (617) 748-3100

John Joseph Moakley United States Courthouse
1 Courthouse Way
Suite 9200
Boston, Massachusetts  02210

March 12, 2007

**VIA Electronic and U.S. Mail**

Thomas McC. Souther, Esq.
Sidley, Austin, Brown & Wood, LLP
787 Seventh Avenue
New York, NY 10019

Mark A. Berman, Esq.
Hartmann, Doherty, Rosa & Berman
126 State Street
Hackensack,  NJ 07601

Adam S. Hoffinger, Esq.
Morrison & Foerster, LLP
2000 Pennsylvania Ave, N.W
Suite 5500
Washington, DC 20006-1888

Attorney Tracy A. Miner
Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, LLP
One Financial Center
Boston, MA 02111

> Re:    <u>United States v. John Bruens, et al.; Criminal No. 05-10102-JLT</u>

Dear Counsel:

In keeping with the government's on-going discovery obligations, and, pursuant to the Courts scheduling order of January 16, 2007, please be advised of the following:

**I.  Evidence Under Fed. R. Evid. 404(b):**

It is the government's position that the evidence listed in items I (A), (B) and (C),  below, does not constitute Rule 404(b) evidence because it is either inextricably intertwined with the charged conspiracy, or it is being offered for other purposes, including, but not limited to, motive, opportunity, knowledge, intent, or modus operandi.  Nonetheless, to the extent that the Court determines such evidence to constitute Rule 404(b) evidence, please be on notice that the government intends to offer the following in its case-in-chief:

**A.  Evidence Relating to John Bruens:**

In a Memorandum dated April 8, 1997, John Bruens was advised by then General Counsel for Serono, Peter Frank, regarding "BIA Instruments/HCFA Anti-Kickback Issues." (S0923293-295)(copy attached).  In this memo, Frank advised Bruens that two recommendations made by Bruens, including his recommendation to give physicians a free BIA device in return for placing fifteen (15) patients on Serostim, "raise serious questions under the Anti-Kickback Statute (42 USC Sec.1320a-7b(b) and should not be used."  On April 17, 1997, John Bruens replied to this memoranda. (S0923296-297)(copy attached).

**B.  Evidence Relating to John Bruens, Mary Stewart and Melissa Vaughn:**

In January of 1999, Bruens, Stewart and Vaughn agreed to give Dr. Nicholoas Bellos of Texas and his partner, "a weekend on Serono" which cost approximately $3,186.90.  (S0007991-7992)(copy of e-mail and related documents attached).

**C.  Evidence Relating to Mark Sirockman**

The government intends to offer evidence that Mark Sirockman made many payments to Dr. Corazon, in addition to the trip to Cannes, in return for writing Serostim scripts.

**II.  Statements of Mark Sirockman:**

The government has previously produced to you numerous statements of all the defendants, and has not yet made a final determination as to every statement it intends to introduce in its case-in-chief.  It is also the government's position that it is not obliged to provide you with advance notice of which statements it intends to introduce in its case-in-chief. However, in keeping with the government's attempt at full disclosure throughout this proceeding, and because the government has made a determination that it intends to introduce the following statements made by Marc Sirockman, we are advising you of the same.

Mark Sirockman told his sales representatives that they were to do "whatever it takes" to sell Serostim prescriptions; he told a sales representative that the representative should call the doctors and offer them $50 per prescription for every prescription they wrote; and told a sales representative that he should promise that Serono would purchase a digital camera for a doctor if the doctor put 20 patients on Serostim.

Further, as with the items I (A), (B) and (C), above, it is the government's position that the above statements are not Rule 404(b) evidence because they are being offered for other purposes, including, but not limited to, motive, opportunity, knowledge, intent or modus operandi.

2

Please do not hesitate to telephone the undersigned at (617) 748-3290 if you have any questions regarding any of these matters.

Very truly yours,

MICHAEL J. SULLIVAN
United States Attorney

By:     /s/ *Mary Elizabeth Carmody*

_____
MARY ELIZABETH CARMODY
Assistant U.S. Attorney

# MINTZ LEVIN

One Financial Center
Boston, MA  02111
617-542-6000
617-542-2241 fax
www.mintz.com

McKenzie E. Webster | 617 210 6856 |  mwebster@mintz.com

March 20, 2007

**Via First Class Mail and E-mail**

Mary Elizabeth Carmody
United States Attorney's Office
John Joseph Moakley U.S. Courthouse
One Courthouse Way, Suite 9200
Boston, MA  02210

Re: United States v. John Bruens, et al. Criminal No. 05-10102-JLT

Dear Ms. Carmody:

I am writing to confirm parts of our telephone conversation on Friday, March 16, 2007, and to follow-up on whether the government will be providing us with greater specificity regarding the "many payments to Dr. Corazon" that are referenced in part I(C) of your March 12, 2007 letter .

First, during our conversation, you represented that the government does not intend to reference or attempt to introduce any evidence (through documents, testimony, or otherwise) regarding Serono, Inc.'s criminal guilty plea in United States v. Serono, Laboratories, Inc., No. 05-10282- RCL.  If this is not the government's position, please let me know immediately so that I may raise the issue before the Court.

Additionally, you indicated that you were going to get back to me yesterday on whether the government will provide us with greater detail of the alleged "payments o Dr. Corazon" that are referenced in part I(C) of your March 12, 2007 letter, including the date, time, place, and manner of these alleged payments.  As I have not heard from you, I assume the government is declining to provide us with this information.  If this assumption is incorrect, please let me know as soon as possible.

Sincerely,

McKenzie E. Webster

cc:    Adam S. Hoffinger, Esquire (via e-mail)
Thomas McC. Souther, Esquire (via e-mail)
Mark A. Berman, Esquire (via e-mail)
Tracy A. Miner, Esquire (via e-mail)