# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

```
-------------------------------------------------------- X
                                         :
UNITED STATES OF AMERICA,                :
                                         :
                                         :
                                         :
              vs.                        :  Criminal No. 05-10102-JLT
                                         :
JOHN BRUENS, ET AL.                      :
                                         :
                   Defendants.           :
                                         :
-------------------------------------------------------- X
```

## DEFENDANTS JOHN BRUENS, MARY STEWART AND MARC SIROCKMAN'S MOTION *IN LIMINE* TO EXCLUDE VOICEMAIL

SIDLEY AUSTIN LLP
Thomas McC. Souther, Esq.
    (admitted *pro hac vice*)
Roger J. Hawke, Esq.
    (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
(212) 839-5300

*Counsel for John Bruens*

MINTZ, LEVIN, COHN, FERRIS,
  GLOVSKY & POPEO, P.C.
Tracy A. Miner, Esq.  BBO # 547137
McKenzie E. Webster, Esq.  BBO #651204
One Financial Center
Boston, Massachusetts 02110
(617) 542-6000

*Counsel for Marc Sirockman*

HARTMANN, DOHERTY,
  ROSA & BERMAN, P.C.
Mark A. Berman, Esq.
    (admitted *pro hac vice*)
126 State Street
Hackensack, New Jersey 07601
(201) 441-9056

*Counsel for Mary Stewart*

Defendants John Bruens, Mary Stewart and Marc Sirockman respectfully move this Court to exclude as hearsay a document that purports to be a transcription of a voicemail allegedly sent by defendant Melissa Vaughn to a number of individuals on March 3, 1999. The transcription of the voicemail was prepared by Kim Jackson who is expected to be a Government witness. Jackson's testimony regarding the voicemail should also be excluded.

## PRELIMINARY STATEMENT

The Government will offer the testimony of Kim Jackson at trial that on March 3, 1999 she prepared a typewritten transcription of an alleged voicemail message received that day from Melissa Vaughn (the "Jackson Note"). The Jackson Note is attached hereto as Exhibit A (the prefatory paragraph to that note is not part of the voicemail and is the subject of another *in limine* motion). The document should be excluded from evidence as inadmissible hearsay. If the evidence is found to be admissible at all, it should be redacted to exclude references to the co-defendants in order to avoid <u>Bruton</u> problems. It should in all events be redacted, as requested by defendant Vaughn, to eliminate the hearsay statements allegedly made by the doctors referred to below.

## ARGUMENT

### A.    The Jackson Note Is Inadmissible Hearsay

The Jackson Note is an out-of-court declaration and, accordingly, is hearsay.  In addition, it contains the following multiple levels of hearsay:

1.    Unnamed doctors make statements to unidentified salesmen ("CCs").

2.    Unidentified salesmen report these alleged statements to Vaughn.

3.    Vaughn conveys the CCs' statements to recipients of the voicemail.

If the Government offers this document in evidence it will undoubtedly attempt to brush aside all of these levels of hearsay and put before the jury, by virtue of this voicemail, fourth-party hearsay statements doctors allegedly made to CCs that "it" – a reference that is undefined in the voicemail – was  "unethical."  This is not permissible under Rule 805 of the Rules of Evidence.  If a hearsay statement contains hearsay, each level of hearsay must conform with an exception to the hearsay rules to be admissible.  See, e.g., United States v. Patrick, 248 F.3d 11, 24-25 (1st Cir. 2001), *cert. denied*, 534 U.S. 1043 (2001), *and cert. denied by* 535 U.S. 910 (2002) (upholding district court's exclusion of evidence, reasoning "[b]oth statements contain multiple levels of hearsay, and [defendant] points to no specific rule supporting admission of the testimony.").

The first level of hearsay is the note itself.  It is not admissible as a business record.  Federal Rule of Evidence 803(6) allows for admission of a document if made by:

> a person with knowledge, *if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation* . . . unless the source of the information or the method or circumstances of preparation indicate lack of trustworthiness.

Fed. R. Evid. 803(6) (emphasis added). This transcription of a voicemail was not "kept in the course of a regularly conducted business activity" and was never produced from the files of Serono. Rather, it was apparently produced to the Government by Jackson, herself, after her employment at Serono had terminated. It was never seen by the defendants prior to its disclosure by the Government during the course of discovery in this case. Secondly, it was clearly not the "regular practice" of Serono, or Jackson, "to make the memorandum" in issue. We believe the evidence will show that no one at Serono regularly transcribed voicemails and that, indeed, this was probably the first and only time that Jackson ever did so. Accordingly, the two criteria for admitting the document as a business record cannot be met in this case.

Even if Jackson did regularly transcribe her voicemails, she was under no business duty to do so. Fed. R. Evid. 803(6); see also, Coxcom Inc., v. Chaffee, No. CIVA 05-107S, 2006 WL 1793184, *8 (D. Rhode Island June 26, 2006) (refusing to admit hearsay conversation contained in expert's report under the business records exception because the conversations were outside regularly conducted business activities, stating that "while it may be [the employee's] practice to consult with more knowledgeable individuals, *it is not a regular part of the [company] employees' job duties*" (emphasis added)). There was nothing in Jackson's duties as an employee of Serono that required her to make transcriptions of voicemails received from her co-workers. Rather, she did so of her own accord. As such, the Jackson Note is inadmissible as a business record under Federal Rule of Evidence 803(6).

Even if the Jackson Note were a business record, the document should be excluded under Rule 805 on the ground that it contains multiple levels of hearsay within hearsay: unnamed doctors allegedly made statements to unnamed salespeople who allegedly made statements to Vaughn who allegedly made a statement that is allegedly recorded on a voicemail

machine.  Each level of hearsay must come within an exception for the document to be

admissible.  No such exceptions are available.  Were this testimony to be admitted in evidence

for the truth of the matters asserted, defendants would be deprived of the right to cross-examine

<u>anyone</u> with respect to these statements.

### B. <u>Admission Of The Jackson Note Would Violate The Best Evidence Rule</u>

Even if the Jackson Note were otherwise admissible, the admissibility of the

document is subject to the Best Evidence Rule.  Fed. R. Evid. 1001-1008.  The Government does

not seek to offer in evidence testimony of an actual telephone conversation between Jackson and

Vaughn.  Rather, it proposes to offer a transcription of a tape recording of a telephone message

that Jackson claims she received.  The Best Evidence Rule bars the admission of this document

into evidence.  Rule 1002 of the Federal Rules of Evidence provides that:

> To prove the content of a writing, recording, or photograph, the
> original writing, recording, or photograph is required, except as
> otherwise provided in these rules or by Act of Congress.

This Rule applies to transcripts of recordings of conversations.  <u>United States v. Morales-

Madera</u>, 352 F.3d 1, 9 (1st Cir. 2003), *cert. denied*, 541 U.S. 965 (2004) ("The usual reason

given for not introducing transcripts in evidence is that the wiretap tapes themselves are the best

evidence of the conversation, not the transcripts.").

Here, the best evidence of the voicemail – the recording itself – was not copied or

preserved by Kim Jackson, who later produced the alleged transcription to the Government.  Ms.

Jackson, of course, is a *qui tam* plaintiff, who profited to the extent of millions of dollars in this

matter.  There is no independent corroboration of when or how the tape was transcribed.  Nor is

there any way to compare Jackson's transcription with what was originally recorded, as is true

when the Government offers in evidence transcriptions of recorded telephone conversations.

Under Rule 1004, the absence of the original tape will be excused only if the original has been

lost or destroyed or cannot be obtained by judicial process or procedures.  However, the
Government would have to demonstrate that it made a diligent and reasonable search for the
original which was unsuccessful.  See, e.g., Sylvania Elec. Prods., Inc. v. Flanagan, 352 F.2d
1005, 1008 (1st Cir. 1965) ("secondary evidence of the content of the original is not admissible
unless the proponent of the testimony shows that a reasonable and diligent search has been made
for the original without success." (citation omitted)); see also, Harrington v. United States, 504
F.2d 1306, 1313-1314 (1st Cir. 1974) (upholding trial court's exclusion of evidence on best
evidence grounds where trial court held that "plaintiffs [] failed to make a satisfactory showing
of the original's unavailability" by "check[ing] with" the possessor of originals).

No explanation has been provided to defendants to explain what happened to the
original voicemail and whether a search was ever made for it either with Serono or with the
many alleged recipients of it.  As stated above, without such proof, secondary evidence, either by
way of testimony or a transcript, is inadmissible.

## <u>CONCLUSION</u>

The Jackson Note and testimony concerning it should, for the foregoing reasons,

be excluded from evidence.

Respectfully submitted,


JOHN BRUENS, MARY STEWART,
MELISSA VAUGHN, and MARC SIROCKMAN
by their undersigned attorneys:

   /s/ Thomas McC. Souther                    /s/ Mark Berman
Thomas McC. Souther, Esq.                 Mark A. Berman, Esq.
   (admitted *pro hac vice*)                     (admitted *pro hac vice*)
Roger J. Hawke, Esq.                      HARTMANN, DOHERTY,
   (admitted *pro hac vice*)                  ROSA & BERMAN, P.C.
SIDLEY AUSTIN LLP                         126 State Street
787 Seventh Avenue                        Hackensack, New Jersey 07601
New York, New York 10019                  (201) 441-9056
(212) 839-5300

*Counsel for John Bruens*                 *Counsel for Mary Stewart*



   /s/ Tracy A. Miner
Tracy A. Miner, Esq.  BBO # 547137
McKenzie E. Webster, Esq.  BBO #651204
MINTZ, LEVIN, COHN, FERRIS,
  GLOVSKY & POPEO, P.C.
One Financial Center
Boston, Massachusetts 02110
(617) 542-6000

*Counsel for Marc Sirockman*



Dated:  March 22, 2007

## **CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing motion was filed electronically in compliance with ECF procedures on this 22nd day of March 2007.

_____/s/ Patricia C. Fratto_____

NY1 6071133v.2

# EXHIBIT A

Voicemail sent by Melissa Vaughn Wednesday, March 3, 1999 regarding John Bruens offer to pay for certain high writing MDs flight and hotel in Cannes, France in April to attend an HIV Nutrition/Wasting program in exchange for 30 patient Rxs during our 6 day sales blitz

"Hey guys - This message is going to the RDs and I'm going to copy Mary Stewart and John Bruens on this. I just had a couple of very sobering phone calls from two of my CCs who presented the Cannes, France program and I can tell you that they presented it in one of the best ways we could possibly present it. They presented it to doctors with whom they have excellent relationships and rapport, who are also top doctors and who had the potential to bring in 30 scrips for the next week or so, and who also would have been perfect for speaking, and so we had everything laid out perfectly – it was the perfect scenario.

"These individuals each called me literally within five minutes of each other and could not express to me the horrible experience they went through and the things that were said to them by their doctors about this program: that it was unethical, that this is the very thing that the FDA looks for, that our drug is too good, our reputation is too good, our clinical consultants work too hard and the reputation is too positive to be stooping to such levels – why is Serono doing this? It just wasn't good – it was not good. I can't express it enough. I just wanted to let you know that we will not be doing this program in the south. We will get business, we will do what we need to do, but we won't go to desperate means that will compromise who we are as a company and who we are as individuals because I'm very proud of who we are and our product and essentially everything we represent as a company and as a product. I thought I'd pass this on to you just to give you some feedback and let you make your own decisions, but it was important enough for me to send it to the group."

Ray Hudgens and Adam Whitehurst were the CCs who asked the physicians. One MD was Dr. Piperato.

JB 009798