# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

```
------------------------------------------------------------- X
                                                              :
UNITED STATES OF AMERICA,                                     :
                                                              :
                                                              :
              vs.                                             :  Criminal No. 05-10102-JLT
                                                              :
JOHN BRUENS, ET AL.                                           :
                                                              :
                     Defendants.                              :
                                                              :
------------------------------------------------------------- X
```

## DEFENDANTS' JOINT MOTION *IN LIMINE* TO ADMIT THE GRAND JURY TESTIMONY OF DR. HOWARD GROSSMAN PURSUANT TO FEDERAL RULE OF EVIDENCE 804(b)(1)

| | |
|---|---|
| SIDLEY AUSTIN LLP<br>Thomas McC. Souther, Esq.<br>   (admitted *pro hac vice*)<br>Roger J. Hawke, Esq.<br>   (admitted *pro hac vice*)<br>787 Seventh Avenue<br>New York, New York 10019<br>(212) 839-5300<br><br>*Counsel for John Bruens* | HARTMANN, DOHERTY,<br>   ROSA & BERMAN, P.C.<br>Mark A. Berman, Esq.<br>   (admitted *pro hac vice*)<br>126 State Street<br>Hackensack, NJ 07601<br>(201) 441-9056<br><br><br><br>*Counsel for Mary Stewart* |
| MORRISON & FOERSTER LLP<br>Adam Hoffinger, Esq.<br>   (admitted *pro hac vice*)<br>James M. Sullivan, Esq.<br>   (admitted *pro hac vice*)<br>2000 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20008-1888<br>(202) 887-1500<br><br>*Counsel for Melissa Vaughn* | MINTZ, LEVIN, COHN, FERRIS,<br>   GLOVSKY & POPEO, P.C.<br>Tracy A. Miner, Esq.  BBO # 547137<br>McKenzie E. Webster, Esq.  BBO #651204<br>One Financial Center<br>Boston, Massachusetts 02110<br>(617) 542-6000<br><br>*Counsel for Marc Sirockman* |

Defendants John Bruens, Mary Stewart, Melissa Vaughn, and Marc Sirockman (collectively, "Defendants") respectfully move this Court for an order, *in limine*, to admit the exculpatory Grand Jury testimony of Dr. Howard Grossman pursuant to Federal Rule of Evidence 804(b)(1).

## PRELIMINARY STATEMENT

Defendants now seek to have excerpts of Dr. Grossman's exculpatory Grand Jury testimony, attached hereto as Exhibit A, admitted in evidence pursuant to Federal Rule of Evidence 804(b)(1).[1] Count Seven of the Indictment alleges that in March 1999 the Defendants offered Dr. Howard Grossman in New York an inducement of a free trip to Cannes in exchange for writing prescriptions for Serostim. Dr. Grossman testified in the Grand Jury on March 16, 2004.[2] See Grossman Tr. 3: 5-21; Ex. A-1 (witness identification and background information). He emphatically denied that any such offer had been made to him. The Government does not plan to call Dr. Grossman as a witness at trial. Dr. Grossman's attorney has informed Defendants by letter, attached hereto as Exhibit B, that if Dr. Grossman were subpoenaed to testify at trial he would invoke his Fifth Amendment privilege against self-incrimination.

## ARGUMENT

For testimony to be admitted under Rule 804(b)(1) the following conditions must be met: (1) the witness must be "unavailable"; (2) the testimony must have been given in another hearing of the same or different proceeding; and (3) the party against whom the testimony is

---

[1] As discussed in detail, *infra* Section 3, this Rule entitles the Defendants to offer Dr. Grossman's exculpatory Grand Jury testimony but does not entitle the Government to offer other sections or the entire transcript.

[2] Citations to "Grossman Tr." refer to the transcript of Dr. Howard Grossman's testimony before the Grand Jury on March 16, 2004.

1

offered must have had the opportunity and similar motive to develop the testimony.  Fed. R. Evid. 804(b)(1).  All three conditions are met here.

### 1. Dr. Grossman Is "Unavailable"

A declarant is "unavailable" under Rule 804(b)(1) if he "is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of the declarant's statement[.]"  Fed. R. Evid. 804(a)(1).  Dr. Grossman's attorney states that Dr. Grossman intends to assert his Fifth Amendment privilege against self-incrimination if he is called to testify.  Accordingly, the witness is "unavailable."  See United States v. Zurosky, 614 F.2d 779, 792 (1st Cir. 1979), *cert. denied*, 446 U.S. 967 (1980) (holding that because witness would invoke Fifth Amendment privilege, witness was "unavailable" under Federal Rule of Evidence 804(a)(1)).

It is not necessary for Dr. Grossman actually to appear in Court to assert the privilege before the Rule can be invoked.  The letter from his attorney stating that he will assert the privilege if subpoenaed is sufficient.  See, e.g., Zurosky, 614 F.2d at 792 (the court ruled that inasmuch as "*it was determined*" that the witness "*was going to* claim his privilege against self-incrimination if he were called to testify" he was "unavailable" (emphasis added)); see also United States v. Williams, 927 F.2d 95, 99 (2d Cir. 1991) (holding that Rule 804(a)(1) does not require the witness's appearance in court; the court stated that "Appellants have suggested no reason why [the judge] should not have believed the representations of the attorney for the incarcerated defendants concerning their clients' intentions to rely on their Fifth Amendment privileges.  The law does not require the doing of a futile act." (citations omitted)); United States v. Zapata, 357 F. Supp. 2d 667, 668 fn. 1 (S.D.N.Y. 2005) (facsimile sent by witness's attorney to United States Attorney's Office stating that witness would invoke his Fifth Amendment privilege sufficient to establish unavailability).

2

### 2. Prior Grand Jury Testimony Is Within The Scope Of The Rule

The First Circuit held in United States v. Omar, 104 F.3d 519, 522 (1st Cir. 1997), that Rule 804(b)(1) "does extend, where all its conditions are met, to grand jury testimony taken at the government's behest and later offered against it in a criminal trial."

### 3. The Government Had The Opportunity And Similar Motive To Examine Dr. Grossman

The Government not only had the "opportunity" to fully examine Dr. Grossman in the Grand Jury with respect to any alleged offer to send him on a free trip to Cannes in exchange for writing Serostim prescriptions, it did so at length. The Government interrogated Dr. Grossman for over two hours. See Grossman Tr. 3: 2; 110: 23-24; Ex. A-1, A-10. Not only was he questioned extensively about the alleged offer of a trip to Cannes, he was repeatedly cautioned that he was under oath, admonished that he must answer truthfully, and reminded of the penalties for perjury (see, e.g., Grossman Tr. 5:14-20; 48: 16-24; 49: 4-9; 69: 10-11; 105: 8-10; 106: 12-14; Ex. A-2, A-3, A-4, A-6, A-8, A-9); see also, United States v. Foster, 128 F.3d 949, 955-56 (6th Cir. 1997), *cert. denied*, 537 U.S. 1217 (2003) (reversing district court's refusal to admit former testimony and holding that the government made obvious use of the opportunity to examine the witness, including warnings on the consequences of committing perjury and threatened loss of immunity). Even if the Government had failed to take advantage of this opportunity – which it did not in this case – the opportunity existed. Id. at 955-56 (noting that even had the government failed to strenuously cross examine the witness, that the *opportunity* to cross examine existed is the crucial determination).

The test for motive is "whether the questioner is on the same side of the same issue at both proceedings, . . . [and] whether the questioner had a substantially similar interest in asserting that side of the issue." United States v. Bartelho, 129 F.3d 663, 672 (1st Cir. 1997),

*cert. denied*, 525 U.S. 905 (1998) (alterations in original) (citation omitted). The issue for trial in this case is whether *quid pro quo* offers of a trip to Cannes in exchange for writing prescriptions were made to doctors. The Government's motive in its examination of Dr. Grossman was to elicit testimony on exactly that issue. Dr. Grossman's testimony, however, refuted the Government's theory – which presumably is why he is not being called as a Government witness.

When Dr. Grossman was asked if he had ever been approached by a representative of a pharmaceutical company with a proposal to send him to a conference in return for writing prescriptions, he testified:

> "Nobody's ever come and offered me a quid pro quo like that. I think they would be afraid to."

(Grossman Tr. 53: 22-23; Ex. A-5). When the Government continued to press him on this subject, the doctor testified:

> Q.   --when your friend, Konstantine Pinteris, brought his boss, Adam Stupak, to your office to invite you to go to Cannes, France, in return for writing a certain amount of scripts, wouldn't that be an unusual event in your practice, Doctor?
>
> A.   If it happened like that, I would have thrown them out of my office.
>
> Q.   And it would have been an event that would have been something that you would remember; is that--
>
> A.   I remember--
>
> Q.   --true?
>
> A.   Yeah. If somebody tried to bribe me that way, I'd remember real well.

(Grossman Tr. 77: 8-20; Ex. A-7).

4

There is no question that the Government had the same motive to develop this testimony in the Grand Jury as it would at trial.

## **CONCLUSION**

The conditions of Rule 804(b)(1) are satisfied. Dr. Grossman is unavailable. His exculpatory Grand Jury testimony should be received in evidence.

Respectfully submitted,

JOHN BRUENS, MARY STEWART,
MELISSA VAUGHN, and MARC SIROCKMAN
by their undersigned attorneys:

  /s/ Thomas McC. Souther
Thomas McC. Souther, Esq.
   (admitted *pro hac vice*)
Roger J. Hawke, Esq.
   (admitted *pro hac vice*)
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
(212) 839-5300

*Counsel for John Bruens*

  /s/ Mark Berman
Mark A. Berman, Esq.
   (admitted *pro hac vice*)
HARTMANN, DOHERTY,
  ROSA & BERMAN, P.C.
126 State Street
Hackensack, NJ 07601
(201) 441-9056

*Counsel for Mary Stewart*

  /s/ Adam Hoffinger
Adam Hoffinger, Esq.
   (admitted *pro hac vice*)
James M. Sullivan, Esq.
   (admitted *pro hac vice*)
MORRISON & FOERSTER LLP
2000 Pennsylvania Avenue, N.W.
Washington, D.C. 20008-1888
(202) 887-1500

*Counsel for Melissa Vaughn*

  /s/ Tracy A. Miner
Tracy A. Miner, Esq.  BBO # 547137
McKenzie E. Webster, Esq.  BBO #651204
MINTZ, LEVIN, COHN, FERRIS,
  GLOVSKY & POPEO, P.C.
One Financial Center
Boston, Massachusetts 02110
(617) 542-6000

*Counsel for Marc Sirockman*

Dated: March 22, 2007

## **CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing motion was filed electronically in compliance with ECF procedures on this 22nd day of March 2007.

                                                /s/ Patricia C. Fratto

NY1 6067000v.2

# EXHIBIT A

```
                    GROSSMAN - 03/16/04                          3
 1                      P R O C E E D I N G S
 2                                                    (10:29 a.m.)
 3              HOWARD A. GROSSMAN, Sworn
 4         EXAMINATION BY MS. CARMODY:
 5         Q    Would you state your full name and give your
 6   residence address, please?
 7         A    Howard Alan Grossman.
 8         Q    And could you spell your last name, please?
 9         A    G-R-O-S-S-M-A-N.
10         Q    And how are you employed?
11         A    Do you want my address?
12         Q    Oh, I'm sorry, your address.
13         A    77 7th Avenue, Apartment 17H, New York, New York,
14   10011.
15         Q    And is that your home address?
16         A    That's my home.
17         Q    And your business address?
18         A    155 West 19th Street, Fourth Floor, New York, New
19   York, 10011.
20         Q    And how are you employed?
21         A    I'm a physician.
22         MS. CARMODY:  Dr. Grossman, before beginning your
23   testimony today, I want to advise you of certain rights and
24   procedures which apply to your testimony.
25         My name is Mary Elizabeth Carmody, and I'm an
```

GROSSMAN - 03/16/04                                          5

1  us and we'll give you a reasonable opportunity to do so.
2          Now, do you understand these rights and procedures
3  as I've explained them to you?
4          THE WITNESS: Yes, ma'am.
5          MS. CARMODY: I will try to frame my questions
6  clearly. It's not our intention to confuse or mislead you.
7  If at any time you do not understand a question, please,
8  tell us and we will repeat it or rephrase it.
9          I would ask that we have that agreement and that
10 you will not answer any question unless you, in fact,
11 understand it; can we have that agreement?
12         THE WITNESS: We can have that agreement. Thank
13 you.
14         MS. CARMODY: Okay. Now, perjury is the making of
15 a false statement under oath as to a material matter which,
16 at the time you make the statement, you know it to be false.
17 Upon conviction for perjury, you could be imprisoned for up
18 to five years, fined up to $250,000 or both; do you
19 understand what I've said?
20         THE WITNESS: Yes.
21         BY MS. CARMODY:
22    Q    Now, Dr. Grossman, other than your attorney, you
23 were -- step back a minute. You have been interviewed, at
24 least, on two occasions before coming before this Grand
25 Jury; is that correct?

GROSSMAN - 03/16/04                                        48

1  behalf of Serono, including but not limited to, Konstantine
2  Pinteris, about a conference that was to occur in April 1999
3  in Cannes, France?
4      A   I don't know if I talked to anybody at Serono
5  about it. It's a fairly well-known conference, the HIV
6  nutrition conference, that happens in the South of France.
7  I don't remember if I spoke to them or not about it.
8      Q   Do you recall, Doctor, having any conversations
9  with Konstantine Pinteris about Serono paying for you to go
10 to the conference in Cannes, France?
11     A   No, I don't remember any conversations like that.
12     Q   Do you remember a time when Konstantine Pinteris
13 brought his boss, Adam Stupak, to your office to talk to you
14 about going to the Cannes conference in France at Serono?
15     A   No. No. I mean, I don't remember it.
16     Q   Is it your testimony before this Grand Jury today,
17 here, as you're sworn under oath, that you received no
18 document or invitation from Serono with respect to going to
19 the conference in Cannes, France?
20     A   I've never found any document, so I don't think, I
21 don't remember getting--
22     Q   That's not my question--
23     A   I don't remember getting a document, and I've
24 never found any document when I've been looking.
25     Q   Your memory is that you have received no document

*APEX Reporting*
(617) 426-3077

3

GROSSMAN - 03/16/04                                            49

1   from Serono concerning their invitation to go to Cannes,
2   France; is that your testimony?
3       A   That's my memory.
4           MS. CARMODY: Okay. Now, I'm going to remind you,
5   Doctor, that you're under oath here today--
6           THE WITNESS: Um-hum--
7           MS. CARMODY: --and that I've already told you
8   what the requirements for and the penalties of perjury are.
9           THE WITNESS: Yes.
10          BY MS. CARMODY:
11      Q   Do you remember having any conversations, in March
12  of 1999, with Konstantine Pinteris at all?
13      A   Not specifically.
14      Q   Would you, upon occasion, have lunch with
15  Konstantine Pinteris at Serono's expense on his business
16  account?
17      A   He would buy lunch for the office. Many companies
18  do.
19      Q   Did he ever take you out for lunch?
20      A   He may have.
21      Q   How about dinner?
22      A   Yeah, he may have done that, too.
23      Q   And your memory is that you don't recall being
24  involved in a study for Serono in 1999?
25      A   I don't remember when these studies started that

APEX Reporting
(617) 426-3077

4

GROSSMAN - 03/16/04                                              53

1  sent internationally in those days.
2       Q    Okay. Would you agree with me, Doctor, that it
3  is, at the very least, unethical for a pharmaceutical
4  company to come into a doctor's office and say to the
5  doctor, if you do this, we will send you to this conference
6  in "y"?
7       A    If you do what?
8       Q    If they're asking you for a quid pro quo. Do you
9  know what a quid pro quo is?
10      A    Yeah, yeah. If you write these prescriptions,
11 we'll, we'll send you to a conference.
12      Q    Okay. Have you ever been approached by any sales
13 representative from any pharmaceutical company that said to
14 you, if you write "x" amount of scripts, we will send you to
15 a conference somewhere else?
16      A    No, I never have, but it looked like that was what
17 they were doing from what I was shown.
18      Q    I'm not asking you what you were shown by the
19 FBI--
20      A    Yeah, yeah, yeah.
21      Q    I'm talking about 1999, Doctor.
22      A    Nobody's ever, nobody's ever come and offered me a
23 quid pro quo like that. I think they would be afraid to.
24      Q    Well, whatever they would be is, is a different
25 question--

GROSSMAN - 03/16/04                                                69

1  things to do those days. I have, was giving lectures in New
2  York those days, which is how you know, and I don't remember
3  getting any of this stuff. I can't find it in my files. I
4  looked for it.
5          I asked, you know, if any of my staff remembered
6  the offer, and none of them did. You know, I've tried
7  everything I can because I honestly don't remember. It's
8  not impossible, and I, you know, I'm not trying to be
9  evasive. I'm trying to be honest.
10     Q    You're here to tell the truth, Doctor--
11     A    I'm here to tell the truth, and I--
12     Q    Okay, so let's, let's move on--
13     A    --honestly don't remember being invited to that
14 conference.
15     Q    I'm going to show you the document just prior to,
16 and I want to remind you, Doctor, that this Grand Jury has
17 seen many documents in the course of its investigation, as
18 well as heard the testimony of many other witnesses; do you
19 understand what I'm saying?
20     A    Yes.
21     Q    Okay.
22     A    I'm, I'm with you.
23     Q    I'm showing you--
24     A    I would like to be a friendly witness--
25     Q    --the second page, showing you the second page of

*APEX Reporting*
(617) 426-3077

6

GROSSMAN - 03/16/04                                              77

1  A    You're asking me if, on a specific date, I recall
2  a conversation. I'm telling you I don't remember. I'm not
3  telling you it didn't happen. I'm very specifically not
4  telling you it didn't happen because I don't remember being
5  asked.
6  Q    If it were to have happened--
7  A    Yes--
8  Q    --when your friend, Konstantine Pinteris, brought
9  his boss, Adam Stupak, to your office to invite you to go to
10 Cannes, France, in return for writing a certain amount of
11 scripts, wouldn't that be an unusual event in your practice,
12 Doctor?
13 A    If it happened like that, I would have thrown them
14 out of my office.
15 Q    And it would have been an event that would have
16 been something that you would remember; is that--
17 A    I remember--
18 Q    --true?
19 A    Yeah. If somebody tried to bribe me that way, I'd
20 remember real well.
21 Q    Okay. So if the people who allegedly attempted to
22 bribe you remember having that conversation with you, is it
23 your testimony before this Grand Jury that it never
24 happened?
25 A    If the people that said they did it, did it, had

**APEX Reporting**
(617) 426-3077

GROSSMAN - 03/16/04                                                      105

1  lunch with my, for my staff.
2      Q    Doctor--
3      A    Just because I wasn't there doesn't mean he
4  doesn't bring in lunch for my staff. It happens all the
5  time, which is why you're making assumptions that are
6  totally invalid. If you want to talk the truth, then let's
7  talk the truth.
8      Q    That's exactly what we'd like to talk about--
9      A    It's not what you want--
10     Q    --is the truth--
11     A    --to talk about because you want to keep making
12 accusations about things that I'm trying, you know, I want
13 to be on your side. I want to help you with this. If they
14 broke the law, if they tried to bribe me, then I would be
15 really, really happy to help you because I, this is what I
16 fight against every day. Okay?
17     Q    We're on April 19th -- 18, 1999--
18     A    I don't remember--
19     Q    Based on this--
20     A    I don't remember having any lunch--
21     Q    --document--
22     A    --at 4:00 in the afternoon. You, you don't show
23 me at this lunch. I can tell you that they order lunch for
24 my staff all the time when I'm not there, and all they have
25 to do is say that they visited the office.

*APEX Reporting*
(617) 426-3077

GROSSMAN - 03/16/04                                     106

1        MS. CARMODY: One moment, please.
2        (Pause.)
3        THE WITNESS: I mean, I just don't know.
4        (Pause.)
5        MS. CARMODY: I want to make sure we get this
6    accurate, Doctor.
7        THE WITNESS: Okay, but, please, stop treating me
8    like an enemy. I am your fr -- I want to help here. I
9    really do. I'm trying to be as truthful with you as
10   possible, I really am, and if you can give me documentation
11   or show me stuff, I promise, I will help you.
12       MS. CARMODY: Doctor, we're not asking you to
13   help. We're asking you to tell the truth.
14       THE WITNESS: Which is exactly what I'm doing.
15       MS. CARMODY: This receipt, I want to make it
16   clear, was 4:18 p.m., but the date was 03/29/99--
17       THE WITNESS: I see that--
18       MS. CARMODY: --that this says, "03/29/99--
19       THE WITNESS: I see that--
20       MS. CARMODY: --"Serostim treatment lunch,
21   Dr. Grossman, Dr. Frechette, PA Florentino, $334.75."
22       THE WITNESS: Um-hum.
23       MS. CARMODY: Okay.
24       BY MS. CARMODY:
25   Q    Now, we showed you a moment ago the wrong page.

GROSSMAN - 03/16/04                              110

1   office, appears to have the name Todd. That could possibly
2   be--
3       A    Todd Konkol--
4       Q    --Todd Konkol from Sue Womble at Serono that
5   indicated, that sent to you the information about the Cannes
6   conference; is that correct?
7       A    That's what I see there.
8       Q    So based on all of that evidence, Doctor, and
9   documents, is it your testimony here today that you don't
10  have any memory at any time of having met with a Serono
11  employee, whether it be Dr. Muurahainen, Adam Stupak or
12  Konstantine Pinteris, where you were invited to go to the
13  Cannes, France, conference?
14      A    That's what I have -- I'm not saying it's
15  impossible. You may be completely right. I just don't
16  remember it. I've tried.
17           MS. CARMODY: Doctor, we're going to excuse you
18  for today, but the grand jurors would like to invite you
19  back on another occasion.
20           THE WITNESS: Okay.
21           GRAND JUROR: You may be excused.
22           THE WITNESS: Thank you.
23           (Whereupon, at 12:40 p.m., March 16, 2004, the
24  witness was excused.)

APEX Reporting
(617) 426-3077

10

# EXHIBIT B

# LAW OFFICE OF TIMOTHY J. MCINNIS

521 FIFTH AVENUE, SUITE 1700 ♦ NEW YORK, NY 10175-0038
TEL: (212) 292-4573 ♦ FAX: (212) 292-4574 ♦ CELL: (917) 903-9424

E-MAIL: MCINNISESQ@AOL.COM

WWW.WHISTLEBLOWERLEGAL.COM

March 12, 2007

Roger J. Hawke, Esq.
Sidley Austin LLP
787 Seventh Avenue
New York, N.Y. 10019

Re: Testimony of Howard Grossman, M.D.

Dear Mr. Hawke:

    I reviewed the grand jury materials you sent and discussed with Dr. Grossman the possibility of testifying in the criminal trial of John Bruens. Be advised that if called to testify, and if asked questions along the lines of those you referred me to in his grand jury testimony (such as whether he was ever offered a trip to France in exchange for writing prescriptions of Serotin), Dr. Grossman would assert his 5th Amendment right against self-incrimination and upon advice of counsel refuse to answer such questions.

Very truly yours,

Timothy J. McInnis, Esq.