UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                    )
**UNITED STATES OF AMERICA**        )
                                    )
                                    )
v.                                  )    Criminal No. 05-10102-JLT
                                    )
                                    )
**JOHN BRUENS, MARY STEWART, MARC** )
**SIROCKMAN, MELISSA VAUGHN**       )
                                    )
        **Defendants.**             )
_____)

**GOVERNMENT'S RESPONSE TO JOINT MOTION OF
DEFENDANTS BRUENS, STEWART AND SIROCKMAN'S
*IN LIMINE* TO EXCLUDE VOICE MAIL**

The United States of America, by its attorney, Michael J. Sullivan, United States Attorney for the District of Massachusetts, opposes the motion *in limine* of the Defendants Bruens, Stewart and Sirockman to exclude a transcription of a voice mail left by defendant Melissa Vaughn and submits this memorandum in support thereof.

1. Introduction

The government intends to offer into evidence a transcription of a voice mail that was prepared by Kimberly Jackson at or around the time she received it - March 3, 1999. The voice mail was left by defendant Vaughn and was transcribed word for word by Jackson. The document includes not only the transcription but also an introductory paragraph in the beginning

and a handwritten note by Jackson at the end (a copy is attached hereto).

The voice mail was left on the Serono AUDIX voice mail system by Vaughn and was sent to the Regional Directors, including co-defendant Sirockman, as well as to co-defendants Bruens and Stewart.  In the voice mail, Vaughn told the other Regional Directors, Bruens and Stewart about the bad experience that two of her sales representatives had when they approached two physicians and made the offer of the trip to the Cannes conference in exchange for the doctors writing new prescriptions of Serostim.  Vaughn told her colleagues, including co-conspirators Bruens, Stewart and Sirockman, that the offer made by the sales representatives was a "horrible experience," and that the doctors described the offer as "unethical" and the "very thing the FDA looks for."  She told her co-conspirators that her region would not be doing the program.

2.    <u>The document is admissible</u>

The document to be offered by the government is in four parts: (1) an introductory paragraph by Jackson setting forth the date and subject matter of the call; (2) the transcription of the call; (3) a statement made by Vaughn after her voice mail to Jackson telling Jackson the names of the sales representatives who had made the offers and the name of one of the doctors to whom the offer was made; and, (4) a handwritten note by Jackson

relaying the content of a telephone call she had with another employee of Serono after receipt of the voice mail.

The government's position is that of the entire document, only item (4) is inadmissible hearsay, and because of this, the government is not seeking to offer the handwritten note into evidence, unless events occur during the course of trial that provide another basis for the handwritten note's admissibility. Items (1), (2) and (3) of the document, on the other hand, are not hearsay at all, or, in the alternative, fall within an exception to the hearsay rule.

The actual transcription of the voice mail [Item (2)] is not hearsay because it is not being offered for the truth of the matters asserted therein. Rather, it is being offered to establish knowledge among the co-conspirators. The transcription is proof that the co-defendants were aware that the Cannes scheme - offering doctors an all expenses paid trip for them and a guest to attend the conference in Cannes, France, in exchange for writing additional prescriptions of Serostim - was wrong, unethical and unlawful.

Furthermore, the voice mail is not hearsay because it is a statement of a co-conspirator, made during the course of the conspiracy and in furtherance thereof. Fed. R. Evid. 803(d)(2)(E).  See, United States v. Arias-Villanueva, 998 F.2d 1491, 1502 (1st Cir. 1993) (statement made in furtherance of

conspiracy if made to keep co-conspirators abreast of ongoing co-conspirator activities).

Finally, with respect to defendant Vaughn, neither the transcription nor her statement to Jackson regarding the names of the sales representatives and the doctors are hearsay, as the statements are admissions by a party-opponent under Rule 801(d)(1) of the Federal Rules of Evidence.

In the alternative, even if the document is deemed to be hearsay, the document falls within the recorded recollection exception set forth in Rule 803(5) of the Federal Rules of Evidence.  As such, the government will offer the document within the parameters defined therein.

3.   The Best Evidence Rule

The defendants also rely on the best evidence rule, Fed. R. Evid. 1002, to support their position that the transcript is inadmissible.  Rule 1002 provides that to "prove the content of a . . . recording, . . . the original . . . is required, except as otherwise provided in these rules."  Rule 1004 is one of the rules that provides the exception.  Rule 1004 provides in pertinent part as follows:

> [T]he original is not required, and other evidence of the contents of a . . . recording . . . is admissible if --
>
> > (1) Originals lost or destroyed.  All originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith.

The voice mail at issue in this case was left in Serono Laboratories, Inc.'s internal AUDIX voice mail system in March 1999, two years and eight months before the government served its first subpoena on Serono. The government is not currently, and has never been, in possession of the actual voice mail. In addition, counsel for Serono has advised that Serono is not in possession of the actual voice mail.

Thus, under Rule 1004, "other" evidence, in this case the transcription, is admissible because the original voice mail is gone, and there has been no allegation that the government, as the proponent of the admission of the voice mail, destroyed it. See, United States v. McMahon, 938 F.2d 1501, 1509, n.4 (1st Cir. 1991). Indeed, the defendants cannot make such an allegation for if they did, it would be absolutely baseless.[1]

Accordingly, the defendants' motion to exclude the admissibility of the voice mail transcription on best evidence grounds should be denied.

---

[1] The voice mail was transcribed by Kim Jackson at the time she received it on March 3, 1999. Thereafter, it was filed with the Court as part of her Qui Tam action, which was filed in September of 2000. The voice mail was included in her disclosure documents that were served on the United States Attorney's Office in Maryland as part of her Qui Tam action in March of 2001. Thus, there can be no claim of recent fabrication.

5

CONCLUSION

Based upon the foregoing, the defendants' Bruens, Stewart and Sirockman's motion to exclude the transcription of Vaughn's voice mail as evidence in this case should be denied.

```
                              Respectfully submitted,

                              MICHAEL J. SULLIVAN
                              United States Attorney


                         By:  /s/ Susan M. Poswistilo
                              MARY ELIZABETH CARMODY
                              SUSAN M. POSWISTILO
                              Assistant U.S. Attorneys
```

CERTIFICATE OF SERVICE

I hereby certify that these documents filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

```
Dated: 04/02/2007             /s/ Susan M. Poswistilo
                              SUSAN M. POSWISTILO
                              Assistant U.S. Attorney
```

Voicemail sent by Melissa Vaughn Wednesday, March 3, 1999 regarding John Bruens offer to pay for certain high writing MDs flight and hotel in Cannes, France in April to attend an HIV Nutrition/Wasting program in exchange for 30 patient Rxs during our 6 day sales blitz

"Hey guys - This message is going to the RDs and I'm going to copy Mary Stewart and John Bruens on this. I just had a couple of very sobering phone calls from two of my CCs who presented the Cannes, France program and I can tell you that they presented it in one of the best ways we could possibly present it. They presented it to doctors with whom they have excellent relationships and rapport, who are also top doctors and who had the potential to bring in 30 scrips for the next week or so, and who also would have been perfect for speaking, and so we had everything laid out perfectly – it was the perfect scenario.

"These individuals each called me literally within five minutes of each other and could not express to me the horrible experience they went through and the things that were said to them by their doctors about this program: that it was unethical, that this is the very thing that the FDA looks for, that our drug is too good, our reputation is too good, our clinical consultants work too hard and the reputation is too positive to be stooping to such levels – why is Serono doing this? It just wasn't good – it was not good. I can't express it enough. I just wanted to let you know that we will not be doing this program in the south. We will get business, we will do what we need to do, but we won't go to desperate means that will compromise who we are as a company and who we are as individuals because I'm very proud of who we are and our product and essentially everything we represent as a company and as a product. I thought I'd pass this on to you just to give you some feedback and let you make your own decisions, but it was important enough for me to send it to the group."

Ray Hudgens and Adam Whitehurst were the CCs who asked the physicians. One MD was Dr. Piperato.

Jeff Aramondo called Caryl Moscardini to tell of how upset Dr. Condoluci in NJ became when he presented the Cannes program/offer to him. He said that he uses Serostim because/if it is the best drug for that patient – no other reason.