UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                    )
UNITED STATES OF AMERICA            )
                                    )    NO. 05-CR-10102 JLT
                                    )
v.                                  )
                                    )
JOHN BRUENS, MARY STEWART,          )
MELISSA VAUGHN, and                 )
MARC SIROCKMAN                      )
                                    )
        Defendants.                 )
_____ )


**DEFENDANTS' MOTION TO DISMISS COUNT FOUR AND
TO STRIKE THE TESTIMONY OF JEFFREY AROMANDO**

In clear violation of U.S. v. Jencks, 353 U.S. 657 (1957), Brady v. Maryland, 373 U.S. 83, 87 (1963), 18 U.S.C. § 3500, and Local Rule 116.2(A) and (B)(2), last night the Government for the first time disclosed to the Defendants an inconsistent prior witness statement of Jeffrey Aromando. This statement, made to New Jersey criminal investigators in 2001, has been in the Government's possession for *years*, yet was first produced to the Defendants just yesterday evening around 7:00 p.m. As the statement both contradicts Mr. Aromando's testimony on the stand last week on the key issue in this case, it is clearly exculpatory of the Defendants. As Defendants' opportunity to properly prepare and cross-examine Mr. Aromando on this statement has already passed and been irrevocably prejudiced, the Defendants respectfully submit that this Court should dismiss Count Four to which the testimony relates, and instruct the jury to disregard Mr. Aromando's testimony in its entirety with respect to the remaining Counts for the government's failure to produce exculpatory evidence.

1

## **ARGUMENT**

A.  <u>Mr. Aromando's Newly Produced December 7, 2001 Statement Directly Contradicts His Testimony Before This Court On April 20, 2007.</u>

On April 20, 2007, Mr. Aromando testified to the following things on direct examination:

(1) that in an exit interview in July 1999, he told the HR person that he "was leaving because I was uncomfortable with the aggressiveness of the sales goals, and that having to make presentations that I questioned whether they were ethical or *legal* made me uncomfortable." (4/20/07 Tr., p. 46) (emphasis added)

(2) that he "awkwardly made the presentation [to Dr. Condoluci], something to the effect of this is something that I'm required to do, if you were to write Serostim 30 times in whatever time period it was, it was relatively short, then you would be eligible to attend a conference in France." (4/20/07 Tr., p. 35)

However, his statement to the New Jersey criminal investigators made on December 7, 2001, just two years after the events in question, paints a different story. According to this initial statement he made to investigators:

(1) Aromando considered the program to be unethical *but legal*. (emphasis added)

(2) Aromando thought that the program only *appeared* to attach prescriptions to rewards, in that prescribers of Serostim *could* receive a trip to France to attend the conference. (emphasis added)  Additionally, Mr. Aromando made *no* mention of any short time frame during which these prescriptions need be written.

This statement contains critical impeachment evidence that goes to the heart of this case, namely that the Cannes program, according to Mr. Aromando, was not a clear quid pro quo as the Government on its last question on redirect was allowed to suggest,[1] and that ***Mr. Aromando did not believe the Cannes program was illegal in 1999.***  Because an essential element of the Anti-Kickback Statute is that a defendant knowingly and willfully violated the statute, this evidence is crucial to the defense. Moreover, as Mr. Aromando is the only witness that has, and will, testify

---

[1] Question:  Did any of those other sales pushes have, as a part of the sales push, the proposition that you had to go to a doctor and offer them an international trip in exchange for writing 30 prescriptions.
Ms. Miner:  Objection
Court:  I'll let him -- I'll let the question stand and the answer stand.

2

regarding Mr. Sirockman's alleged involvement in offering a kickback to Dr. Condoluci or any other doctor, this evidence is both critical impeachment evidence and is wholly exculpatory as it effectively negates his culpability.

Significantly, this newly produced witness statement was the first one Mr. Aromando ever made to any investigator, it was closest in time to the events in question (and made over two years before his 2003 statements), and it was the only statement to an investigator that was made *prior to* his entering into a cooperation agreement. Thus, had the statement been produced, defense counsel could have shown how the witness' testimony changed as a result of his cooperation agreement. The Government undeniably had and used this statement in its preparation of Mr. Aromando's grand jury testimony in March 2003 and his testimony before this Court last week, yet precluded the Defendants from effectively using it to impeach the witness' direct testimony at a time when it was needed.

      B.      <u>The Dismissal Of Count Four And The Striking Of Mr. Aromando's Testimony Is The Only Just Remedy For This Egregious Violation</u>

In this instance, as in others before it, simply re-calling Mr. Aromando to the stand for further cross-examination is an insufficient remedy to cure the Government's egregious violation as it simply will rehash his prior testimony and remind the jury of a part of the case that is over. Rather, dismissal of Count 4 of the Indictment is the appropriate remedy given the conduct of the United States Attorney's Office with respect to its discovery obligations in this case. The discovery rules are there to protect the defendant's constitutional right to due process of the law and must have meaning. There is simply no excuse for the prosecutors not to live by the rules and produce exculpatory evidence in their possession at a time when it has meaning. While the dismissal of a charge and the striking of testimony is a serious step, so too is the non-disclosure

of crucial exculpatory evidence. Moreover, it is another instance where "the United States Attorney's Office [has] continue[d] in a consistent pattern and practice of negligent nondisclosure, resulting in actual prejudice to defendants." United States v. Osorio, 929 F.2d 753, 763 (1st Cir. 1991). In this District, many judges have noted that there has been a long pattern and practice of attorneys in this District's U.S. Attorney's Office failing to disclose impeachment and exculpatory evidence, and sanctions short of dismissal have failed to prevent such reoccurrences. In fact, just several months ago, Judge Wolf dismissed a criminal case, effectively with prejudice, because of the government's failure to produce exculpatory documents and information. See United States v. Diaz, Criminal No. 05-CR-30042-MLW, transcript of Dec. 21, 2006 hearing. The exculpatory nature of the documents that had not been produced could hardly have been more clear – certain contents of an FBI CW file and a CI file for a trial witness. Id. at 7-10.

The Diaz dismissal came on the heels of an August 10, 2006 First Circuit Court of Appeals decision upholding Judge Wolf's decision to re-sentence and set free Vincent Ferrara. See United States v. Ferrara, 456 F.3d 278 (1st Cir. 2006). Judge Wolf acted because of the government's "egregious violation of its clear constitutional duty to disclose material evidence negating guilt to defendants." See Memorandum and Order Concerning Resentencing, May 13, 2005 at 51, Criminal No. 00-11693. See also Memorandum and Order dated April 12, 2005, United States v. Ferrara, 384 F. Supp. 2d 384, 387 (D. Mass. 2005) (detailing court's findings that the government "violated its clearly established constitutional duty to disclose to [defendant], before trial, important exculpatory information that directly negated his guilt" on charges that he was complicit in a murder). In Ferrara, the First Circuit concluded that the withheld evidence was patently obvious, the government was obligated under the local rules and

4

that its non-production "cannot be palmed off as mere inadvertence (or even as slipshod performance)." 456 F.3d at 292

Roughly a year before it decided Ferrara, the First Circuit upheld Judge Young's grant of a new trial to Kenneth Conley because of a Brady violation. United States v. Conley, 425 F.3d 183 (1st Cir. 2005). The court found that the government had violated the defendant's Due Process rights by improperly withholding an FBI memorandum documenting that a key witness had said that he was uncertain about his memory of the subject matter of his testimony. Id. at 189-90. In his Memorandum and Order granting a new trial in Conley, Judge Young noted that the government's non-disclosure of *Brady* material was but the most recent manifestation of a chronic problem: "[i]n this District, the government has a sorry record stretching back at least a decade of failing to make the disclosures required by law. See, e.g., United States v. Coppola, No. 03-10289 (D. Mass. filed Aug. 27, 2003); United States v. Rodriguez, No. 01-10206." Memorandum and Order of August 18, 2004 at 19 n.8.

Judge Wolf noted in 2000 that "the failure of the United States Attorney's Office and federal investigative agencies to satisfy their discovery obligations are unfortunately part of a long pattern." United States v. Diabate, 90 F. Supp. 2d 140, 144 (D. Mass. 2000). Judge Woodlock came to a similar conclusion six years before Judge Wolf wrote Diabate. Explaining his finding that the government's failure to preserve and disclose Jencks material was not excusable negligence, but a deliberate and knowing failure to do what the law clearly requires, Judge Woodlock wrote:

> To understand why this is so, a page of history is worth a volume of logic. Given the historic pattern in the treatment of disclosure responsibilities in the United States Attorneys Office for this District, it does not require any strain to find that the disclosure responsibilities were not undertaken in good faith. This case presents yet another example of concerted indolence in pursuing disclosure by the United States Attorney's Office and a willful

5

> blindness to the failure of its agents who had disclosure duties to fulfill them. This pattern is evident in case law from the Court of Appeals over the past decade.

United States v. Mannarino, 850 F. Supp. 57, 71 (D. Mass. 1994).  See also United States v. Hastings, 847 F.2d 920, 922 (1st Cir. 1988) (rejecting "several layers of lame prosecutorial excuses" for the failure to provide required discovery and noting that "the government's reluctance freely to furnish automatic discovery materials was chronic")

As discussed above, the United States Attorney's Office suffers a lamentable pattern and practice of disregard for, or indolence toward, its discovery obligations.  This is a pattern that cannot be ignored.  As the First Circuit has recognized in United States v. Houlihan, the courts enjoy "supervisory powers to secure enforcement of better prosecutorial practice and reprimand of those who fail to observe it."  92 F.3d 1271, 1291 (1st Cir. 1996) (citing United States v. Osorio, 929 F.2d 753, 763 (1st Cir. 1991)).  The supervisory power can be used to dismiss charges or overturn convictions if there is (1) "plain prosecutorial misconduct" and (2) "cognizable prejudice to a particular defendant." Houlihan at 1291.  As both elements are clearly present here, it is appropriate for this Court to dismiss Count 4 as a "sanction against overzealous prosecutors."  Id.  This is the only remedy that will prevent the government from enjoying a tactical advantage from its misconduct in this case. Moreover, in light of the clear inconsistencies between Aromando's witness statement and testimony on a matter going directly to the heart of Mr. Sirockman's culpability as to Count 4, it is obvious that Mr. Sirockman has suffered prejudice by the late disclosure transcending merely the opportunity to cross-examine differently.  Cf. United States v. Walsh, 75 F.3d 1, 8 (1st Cir. 1996) (holding that a remedy for a Jencks violation requires prejudice beyond "mere assertions that the defendant would have conducted cross-examination differently").

## CONCLUSION

WHEREFORE, for the foregoing reasons, the Defendants move this Court to Dismiss Count Four of the Indictment, and strike the testimony of Mr. Aromando in its entirety, explaining to the jury that the testimony cannot be considered because the prosecutors failed to produce an inconsistent prior statement of the witness as required by law. .


Respectfully submitted,


**JOHN BRUENS, MARY STEWART,
MELISSA VAUGHN, and MARC SIROCKMAN,**

By their undersigned attorneys.


| | |
|---|---|
| /s/ McKenzie E. Webster | /s/ Thomas McC. Souther |
| Tracy A. Miner | Thomas McC. Souther |
| McKenzie E. Webster | Counsel for John Bruens |
| Counsel for Marc Sirockman | |
| | |
| /s/ Mark. A. Berman | /s/Adam S. Hoffinger |
| Mark A. Berman | Adam S. Hoffinger |
| Counsel for Mary Stewart | Counsel for Melissa Vaughn |


**Dated:**  April 26, 2007


## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing motion was filed electronically in compliance with ECF procedures on this 26th day of April 2007.

/s/ McKenzie E. Webster

4029330v.1